**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hollis GRISSOM, Defendant-Appellant.**

**No. 85–1236.**

United States Court of Appeals,
Tenth Circuit.

March 24, 1987.

R. Raymond Twohig, Jr., of Deaton & Twohig, Albuquerque, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty., and Mark D. Jarmie, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, SEYMOUR and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 34.1.8(c) and 27.1.2. The cause is therefore ordered submitted without oral argument.

Defendant, Hollis Grissom, was convicted by a jury of embezzlement under 18 U.S.C. § 657. On appeal, he alleges that (1) applicable federal law, 12 C.F.R. § 563.-40, does not prohibit his conduct; (2) an instruction given by the district court negated his mistake of law defense; and (3)

the court's refusal to include subsection (b) of 12 C.F.R. § 563.40 in its instructions both deprived the jury of controlling federal law under which his conduct was lawful, and impaired his mistake of law defense.

In June 1983 Thomas Hartley, a principal of Eaton Investors, asked defendant if State Savings and Loan of Clovis, New Mexico (State Savings) would finance construction of a medical building in Denver, Colorado. At the time defendant was the president of State Savings and owned 72% of its stock. On July 5, 1983, defendant wrote that State Savings granted Hartley a six-month financing commitment for $450,-000. The loan commitment provided for a two percent origination fee,[1] half of which was payable upon Hartley's acceptance of State Savings' commitment. Shortly thereafter Hartley sent an acceptance letter and check for $4500, representing the one percent fee due upon acceptance. This check was made out to defendant personally rather than to State Savings, apparently as a result of a secretarial error. Defendant applied the check to his personal use, endorsing the check at a local bank and applying a part of the proceeds to a personal loan with that bank and taking the rest in cash.

In November 1983, the Federal Savings and Loan Insurance Corporation (FSLIC) placed State Savings in receivership. Hartley, upon learning that the FSLIC would not honor the loan commitment because it had no record that State Savings had received the one percent origination fee, asked defendant what he had done with the money. Defendant refused to discuss the matter. Defendant was thereafter indicted for embezzlement.

At trial defendant pressed two related defenses. Asserting that he had taken the $4500 as compensation for services and expenses he incurred in arranging the loan, he first contended that State Savings' board of directors had granted him authority to set the compensation of all bank employees, including himself. Defendant also contended that he reasonably believed

---

1. An origination fee is a fee paid to lenders to cover the administrative costs of making a loan.

his conduct was legal based on N.M.Stat. Ann. § 58–10–41, which provides in part: "No director, officer or employee of an association shall receive any fee or other compensation of any kind in connection with procuring any loan for an association *except for services actually rendered* as provided in this section." (emphasis added.) Defendant asserted that this statute authorized him to receive compensation for the time spent and costs incurred in negotiating the loan with Hartley.

State Savings, however, as a federally insured institution, is also subject to federal regulation, including the following prohibition of loan procurement fees:

"Restrictions on loan procurement fees, kickbacks and unearned fees.

(a) *Loan procurement fees.* No affiliated person of an insured institution may receive, either directly or indirectly, from such institution, any subsidiary thereof, or any other source *any fee or other compensation of any kind* in connection with the procurement of any loan from such institution or subsidiary thereof."

12 C.F.R. § 563.40(a) (emphasis added).

The district court instructed the jury with respect to both the New Mexico statute and the federal regulation quoted above, and further instructed the jury that the "United States' Constitution provides that state laws are void to the extent they conflict with Federal laws." R. III, 315. The court did not state whether the federal and state provisions did conflict; and it refused to include subsection (b) of 12 C.F.R. § 563.40 in the instructions. Subsection (b) provides:

"(b) *Kickbacks and unearned fees.* The prohibitions contained in sections 8(a) and 8(b) of the Real Estate Settlement Procedures Act of 1974 (Pub.L. 93–533) [RESPA] shall apply to any fee, kickback, thing of value, and any portion, split or percentage of any charge, either directly or indirectly, given to or accepted by an insured institution or subsidiary or affiliated person thereof, in connection with any loan on real property made by an insured institution or subsidiary there-

of, without regard to whether the loan is within the term 'federally related mortgage loan', as defined in section 3(1) of the Act."

Sections 8(a) and 8(b) of RESPA, 12 U.S.C. § 2607(a) and (b), provide as follows:

"(a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

The court refused Grissom's request to include section 8(b) of the RESPA statute in the instructions.

I

Defendant's first argument on appeal is that his conduct did not violate federal law. He contends that subsection (b) of 12 C.F.R. § 563.40 "expressly limits its own provisions and those of [subsection (a)] to enumerated provisions of the RESPA statute which expressly allows fees such as Mr. Grissom's for services actually rendered." Appellant's brief at 10.

█ We disagree with this interpretation of the federal regulation at issue. Subsection (a) of § 563.40 clearly bars persons affiliated with federally insured institutions from receiving *any* fee—earned or unearned—in connection with the *procurement* of a loan. Defendant contends that he considers the money he took to have been compensation for procuring the loan. Subsection (b) of Section 563.40, on the other hand, extends additional prohibitions contained in RESPA to insured institutions and affiliated persons with respect to loans on real property. Subsections 8(a) and 8(b) of RESPA prohibit certain kickbacks, referral fees, and unearned commissions con-

**580**

nected to charges for settlement services. *See* 12 U.S.C. § 2607(a) & (b); *see also* 12 U.S.C. § 2602(3) (defining "settlement services"). Subsection (b) of § 563.40 by its express terms incorporates only the *prohibitions* contained in RESPA, and provides no basis for defendant's argument that subsection (b) was intended to limit the unqualified language of subsection (a). Subsection (a) squarely applies to defendant's situation, and thus we reject his contention that his conduct did not violate 12 C.F.R. § 563.40.

## II

 Defendant next challenges the court's instruction that state law is void to the extent it conflicts with the federal regulation. He contends that this amounted to a directed verdict of guilty, negating his mistake of law defense. We disagree. Jury instructions must be read as a whole. *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975). The court also instructed the jury that "evidence that the accused acted or failed to act because of ignorance of the law is to be considered by the jury in determining whether or not the accused acted or failed to act with specific intent," R. III, 313, a necessary element of the offense. Informing the jury that conflicts must be resolved in favor of federal law did not vitiate the court's instruction that defendant's ignorance of the law could negate the intent necessary for the offense. The jury was still free to conclude that, even though federal regulations proscribed Grissom's conduct, his ignorance of those regulations prevented him from acting willfully. The challenged instruction did not require a verdict of guilty.

## III

Defendant finally contends that the court erred in refusing to include 12 C.F.R. § 563.40(b) in the instructions, because the omission not only deprived the jury of the controlling federal law under which his conduct was not prohibited, but also impaired his mistake of law defense. As discussed above, neither subsection (b) nor the RES-

PA provisions it references legalize Grissom's conduct. The district court therefore correctly refused to include them in the jury instructions as controlling law. The court also refused this instruction because it concluded that defendant had not relied on subsection (b). Defendant's reliance was a condition of fact upon which the subsection's relevancy depended. *See* Fed. R.Evid. 104(b). Absent reliance, the subsection was irrelevant to his mistake of law defense.

Although defendant testified that he had read the regulations, he stated that they had no bearing on his taking the fee. In addition, defendant's attorney explicitly stated that defendant had not relied on subsection (b). Thus it was within the trial court's discretion not to include subsection (b) in the instructions. *See United States v. Linn,* 438 F.2d 456, 460 (10th Cir.1971) ("Instructions should be confined to issues in the case and the facts developed by the evidence ...").

AFFIRMED.