**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arloha Mae PINTO,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marcel Samuel LAMBERT,
Defendant–Appellant.**

Nos. 87–1023, 87–1045.

United States Court of Appeals,
Tenth Circuit.

Jan. 29, 1988.

Linda L. Sybrant, Sp. Asst. U.S. Atty., Kansas City, Mo. (Benjamin L. Burgess, Jr., U.S. Atty., Kansas City, Kan., with her on the brief), for plaintiff-appellee.

James L. Eisenbrandt, Morris, Larson, King and Stamper, Overland Park, Kan., for defendant-appellant Arloha Mae Pinto.

Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., for defendant-appellant Marcel Samuel Lambert.

Before MOORE, McWILLIAMS and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

On April 1, 1986, defendant-appellant Marcel Samuel Lambert (Lambert) and his wife, defendant-appellant Arloha Mae Pinto (Pinto), were named in a seven-count indictment. They were jointly charged with one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and one count of falsifying a tax return, in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2. Defendant Lambert also was charged with five counts of tax evasion, in violation of 26 U.S.C. § 7201.

A jury found defendants guilty on all counts. The court sentenced defendant Lambert to seven consecutive two-year terms of imprisonment and defendant Pinto to concurrent three-year terms of imprisonment. Both defendants appeal, contending that: 1) the evidence was insufficient to support the convictions; 2) the trial court erroneously admitted co-conspirator hearsay; 3) there was a fatal variance, as to the conspiracy count, between the indictment and the evidence presented at trial; 4) the trial court erred in denying severance; 5) the conspiracy count should have been dismissed because the statute of limitations had expired; and 6) the trial court failed to give defendants' instruction regarding their theory of defense and improperly instructed the jury regarding the cash expenditure method of proving tax evasion. We affirm.

The rather complex factual background of these cases will be briefly summarized, with additional facts discussed as they pertain to the issues raised by defendants. At trial, the government presented its case in two parts, initially introducing evidence pertaining to the joint charges of conspiring to conceal taxable income derived from the sale and distribution of marijuana in 1977 and of claiming a false home mortgage interest expense on Pinto's 1980 tax return. The essence of the government's theory was that defendants concealed $150,000 in marijuana income by using cash to purchase the first in a series of three homes and later obtaining sham mortgages to create the appearance that the purchase money came from loans.

Marty Ritschel and Michael Bono testified that they purchased substantial quantities of marijuana from Lambert over an approximately two-year period commencing in 1976. Sally Robinson Wells testified that in September of 1977, Lambert "fronted" 300 pounds of marijuana to her former husband, Bruce Robinson, and another man. Robinson testified that the bales were weighed in defendants' basement and transported in Lambert's car to a "stash" house. The marijuana was then stolen. Soon after the theft was discovered, the parties to the transaction held a meeting, at which time Pinto demanded payment for the stolen marijuana and identified the lost $100,000 as hers.

Regarding the series of real estate transactions, it was revealed that during the final two months of 1977, Pinto took $149,000 in cash and purchased eighteen cashier's checks from sixteen different banks in the Kansas City area. With the cashier's checks, $1,154.66 in cash and a mortgage in favor of the builder, Pinto bought a $190,500 home in Leawood, Kansas. Neither Pinto nor Lambert reported the $150,000 on their respective 1977 income tax returns. In November of the following year, defendants sold the house. With the proceeds from that sale, plus an additional $31,960.19 in cash, Pinto purchased outright a

second home in Leawood for $220,050. On December 5, 1978, Pinto presented her realty company with a $150,000 note and mortgage, which had been executed in favor of a Cayman Islands corporation formed by Lambert, and requested that a lien be filed against the residence she had purchased outright the previous month.

In early 1980, defendants bought yet another residence, again in Leawood. The mortgage on the second home was rolled over into a new note in favor of the offshore corporation. On March 25, 1981, Pinto filed her 1980 income tax return and reported a deductible home mortgage interest expense of $20,424.00, an amount arrived at by computing interest on the $150,000 note. Defendants sold the third residence in November of 1985. On November 8, 1985, they gave the title insurance company a Deed of Release, dated November 20, 1984, which stated that the second mortgage was released "in consideration of the full payment" of the debt.

Following a summary of the evidence admitted on the joint charges, the government, employing the cash expenditure method of proof, endeavored to prove the tax evasion charges filed against Lambert. An analysis of defendants' financial activities for the years 1974 through 1978 established that they spent $115,913.96 more cash than they had available, signifying that Lambert did not have an appreciable amount of cash on hand in 1979, the beginning of the indictment period. The government then analyzed the tax years 1979 through 1983 and established that Lambert's cash expenditures far exceeded his reported income.

Additional evidence was presented to show that Lambert took steps to conceal income and thereby evade the payment of taxes. The government established that Lambert dealt almost exclusively in cash, and that among his sizeable cash expenditures were the purchases a number of automobiles, none of which were registered in his name or titled in the state of Kansas. In 1980, Lambert directed his brother, who was preparing their parents' estate tax returns, to report a non-interest bearing loan

of $50,000, which Lambert represented their father had made to him in 1976, and also to report $60,000 cash on hand, an amount which Lambert represented had been given to him by their parents.

## I.

Both defendants strenuously argue that the evidence was insufficient to support their convictions. Our standard for evaluating the sufficiency of the evidence is well established. We view all the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government. *United States v. Hooks*, 780 F.2d 1526, 1529 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). We then must determine whether a reasonable jury could find the defendants guilty beyond a reasonable doubt. *Id.* at 1531.

## A.

Defendant Lambert claims that the evidence was insufficient to show that he had substantial income from the sale and distribution of marijuana. In a related argument, defendant Pinto asserts that the evidence was insufficient to show that she intended to join a conspiracy to evade taxes on that income.

It is true, as defendants point out, that the Internal Revenue Service (IRS) agents who testified were unable to state the amount of defendants' income from drug trafficking. Nevertheless, there was substantial evidence to support the jury's conclusion that defendants derived a significant amount of income from the sale and distribution of marijuana. At one time, Lambert described himself as the "main man" for supplying marijuana in Kansas City. Ritschel testified that he had paid Lambert more than $200,000 for the marijuana that he had purchased between 1976 and 1978. Bono testified that he had purchased marijuana from Lambert on six occasions, each time buying quantities of twenty-five to fifty pounds at a price of $285 per pound. That testimony, along

with other evidence indicating that defendants dealt almost exclusively in cash and failed to report the $150,000 used to purchase the first residence, supports a reasonable inference that the funds used by Pinto to purchase the residence were derived from the sale of marijuana.

In arguing that the government failed to show that she had the requisite intent to join the conspiracy, defendant Pinto similarly alleges that there was no evidence of marijuana income, and in addition asserts that there was no evidence to show that she had knowledge of marijuana profits realized by Lambert or of the illegitimate nature of the two mortgages. We cannot agree. Contrary to Pinto's assertion, she does not stand convicted without proof of her knowledge of the conspiracy's objective or solely because of her relationship with Lambert. *See, e.g., United States v. Jones,* 808 F.2d 754, 756 (10th Cir.1987); *United States v. McMahon,* 562 F.2d 1192, 1196–97 (10th Cir.1977).

■ "The essence of the crime of conspiracy is an agreement to violate the law." *United States v. Troutman,* 814 F.2d 1428, 1446 (10th Cir.1987). In a conspiracy prosecution, the evidence must support a finding that the conspirators had a unity of purpose or a common design and understanding. *United States v. Kendall,* 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed. 2d 889 (1986). The existence of an agreement to accomplish an unlawful objective "may be inferred from a 'development and a collocation of circumstances.'" *United States v. Pack,* 773 F.2d 261, 265–66 (10th Cir.1985) (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)).

■ The government was required to show that Pinto knew of the conspiracy to evade taxes on marijuana profits and knowingly participated in the conspiracy. *United States v. Kendall,* 766 F.2d at 1431–32. Despite the fact that the majority of the evidence regarding the marijuana trafficking directly implicated only her husband, there was evidence which linked Pinto to the trafficking and thus supported a rea-sonable inference that she knew of the existence of profits derived from the sale of marijuana. For instance, it was shown that large quantities of marijuana were stored in the basement of the house where she lived with Lambert. When the $100,-000 drug deal went awry, Pinto claimed ownership of the stolen marijuana and demanded payment of the money lost as a result of the theft. Her knowledge of both the existence of marijuana profits and the use of the sham mortgages to conceal those profits was demonstrated by the fact that her purchase of the first residence was, in effect, a cash transaction, the bulk of the purchase price having been comprised of cashier's checks which she had acquired earlier with $149,000 in cash. Moreover, as discussed below, there was other evidence which indicated that Pinto had knowledge of the illegitimate nature of the mortgages.

### B.

■ Both defendants assert that the government failed to prove either that Pinto did not have a legitimate home mortgage or that she did not pay mortgage interest as stated on her 1980 income tax return.

The nature of the purported mortgages and Pinto's failure to pay any mortgage interest can be inferred from the evidence presented. In the latter half of 1978, Lambert set up a corporation in the Bahamas, Luxaco Limited (Luxaco), and another corporation in the Cayman Islands, Yarrabee International Limited (Yarrabee). At that time, the secrecy laws of the Bahamas and the Cayman Islands prevented the United States government from investigating corporations established in those countries. Pursuant to a 1984 agreement between the United States and the Cayman Islands, the government obtained public records pertaining to Yarrabee as well as records kept by the law firm and the management company which represented the corporation. Those records revealed that Yarrabee was a subsidiary of Luxaco and that the corporation had issued only three shares of stock at a price of one dollar per share. No mortgages or schedules of payments were

found. A letter dated March 17, 1980, provided that there would be no further use for the corporation after the release of the mortgage had been finalized. The transcript also reflects the testimony of the designated agent for Yarrabee, a Kansas City attorney, who testified that Pinto made no interest payments to his law firm.

## C.

Defendant Lambert makes a three-pronged attack on the sufficiency of the evidence presented to show that he had taxable income in excess of that reported on his returns for the years 1979 through 1983.[1] He contends that the government failed to 1) show that he did not have cash on hand in 1979, 2) offer an accurate cash on hand figure for the beginning of each taxable year in the indictment period and 3) establish a likely source of income.

The government employed the cash expenditure method of proof, which permits circumstantial proof of a defendant's taxable income in cases where the prosecution is unable to show directly specific items of such income. *United States v. Bianco*, 534 F.2d 501, 503 (2d Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976).

> Under the 'cash expenditures' method, after taking into account the amount of resources the taxpayer had on hand at the beginning of a period, the income received by the taxpayer for the same period is compared with his expenditures that are not attributable to his resources on hand or non-taxable receipts during the period. A substantial excess of expenditures over the combination of reported income, non-taxable receipts, and

cash on hand may establish the existence of unreported income.

*United States v. Citron*, 783 F.2d 307, 310 (2d Cir.1986). The relevant issue is whether expenditures in excess of reported income can be accounted for by assets available at the outset of the prosecution period or non-taxable receipts during the period. *Taglianetti v. United States*, 398 F.2d 558, 565–66 (1st Cir.1968), *aff'd*, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); *see also United States v. Pack*, 773 F.2d at 264–65 (establishing unreported income by cash expenditure method of proof).

While the opening net worth of the taxpayer, including cash on hand, must be demonstrated "to a reasonable certainty," it need not be established by a formal net worth statement. *United States v. Citron*, 783 F.2d at 315. Here, the government compared defendants' cash expenditures during the years 1974 to 1978 with the amount of income reported on their tax returns, plus other funds they had available, resulting in a showing that cash expenditures exceeded reported income and other funds by $115,913.96. *See United States v. Terrell*, 754 F.2d 1139, 1146–47 (5th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 635 (1985). That comparison tended to show that defendant could not have had a significant amount of cash on hand and thus supports the jury's conclusion that Lambert had insufficient assets at the beginning of the prosecution period to have supported his expenditures in any of those years.[2] *United States v. Bianco*, 534 F.2d at 505.

Nor was the government required to offer an accurate cash on hand figure, as

---

1. During the indictment period, Lambert's cash expenditures far exceeded his reported income: in 1979, his income was $36,000, while cash expenditures totalled $132,098.31; in 1980, his income was $6,000, while cash expenditures totalled $134,265.44; in 1981, his income was $6,000, while cash expenditures totalled $100,-820.79; in 1982, his income was $7,000, while cash expenditures totalled $34,160.21; and in 1983, his income was $30,000, while cash expenditures totalled $158,901.39.

2. In *Bianco*, the defendant's contention that the government failed to negate the possibility of a cash hoard was rejected because there was no

evidence to indicate that the defendant had such a cache. *United States v. Bianco*, 534 F.2d at 505. As the court explained,

> [o]f course, as in any criminal prosecution, the defendant is under no obligation to prove any particular set of facts, including the existence of a non-taxable source, such as a 'cash hoard' from which his expenditures were made. But once the government has introduced sufficient evidence from which the jury could conclude with reasonable certainty that no such assets existed, the defendant remains silent at his own peril.

*Id.* at 505–06 (citations omitted).

part of opening net worth, for the beginning of each taxable year in the indictment period. *See United States v. Mastropieri,* 685 F.2d 776, 784 (2d Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982). In a cash expenditure case, reasonable certainty may be established without presenting opening net worth positions for each of the taxable years so long as the proof "makes clear the extent of any contribution which beginning resources or a diminution of resources over time· could have made to expenditures." *Taglianetti v. United States,* 398 F.2d at 565. Thus, there need not be any formal opening net worth statement, which would include cash on hand, so long as sources of available funds are identified and quantified. *Id.* at 565 n. 7. The purpose of including an accurate identification of any diminution of resources is to enable the jury to determine if expenditures were financed by a liquidation of assets, depletion of a cash hoard or unreported income. *United States v. Citron,* 783 F.2d at 315. For example, if an asset is sold, an accounting must be made of that fact because the proceeds could be used to finance expenditures during the year in question. *See Taglianetti v. United States,* 398 F.2d at 564. The government accounted for the sale or disposal of assets during the indictment period, and none of the assets acquired by Lambert during that time were income-producing. The evidence presented was sufficient to enable the jury to determine whether the expenditures in excess of reported income could be accounted for by assets available at the opening of the prosecution period or by non-taxable receipts during the period. *Id.* at 565–66.

Defendant's final contention, that the government did not establish a probable source of income, is also unavailing. By presenting evidence pertaining to Lambert's involvement in marijuana and cocaine trafficking, the government met its burden of showing "at least one 'likely source' of taxable income." *United States v. Bianco,* 534 F.2d at 506; *see United States v. Mastropieri,* 685 F.2d at 784–86. Such evidence was sufficient to support the inference that the cash expenditures proved were attributable to currently taxable income. *See United States v. Bianco,* 534 F.2d at 506–07.

Upon a careful review of the record, we conclude that defendants' sundry claims are without merit and hold that the evidence was sufficient to support the jury's verdict.

## II.

Defendant Pinto next asserts that the trial court erred in admitting certain hearsay statements. She argues that the court failed to follow the preferred order of proof for the admission of co-conspirator hearsay and erroneously found that the government had shown the existence of a conspiracy.

At the outset of the trial, Ritschel and Bono testified about their marijuana dealings with Lambert. During the testimony of Sally Wells, defense counsel objected to the admission of any statements made by Lambert to Wells concerning Lambert's involvement in marijuana trafficking and his identification of boxes in defendants' basement as containing marijuana. In allowing the testimony, the court apparently agreed with the government's argument that the statements were admissible as admissions made by Lambert and therefore were not hearsay. Rec. vol. III at 81–88; *see* Fed.R. Evid. 801(d)(2). Wells then testified that during the meeting about the stolen marijuana, Pinto identified the lost $100,000 as hers. Upon the succeeding direct examination of Wells' ex-husband, Bruce Robinson, a question was asked about Robinson's discussions with Lambert concerning marijuana distribution. Counsel for Pinto again objected on grounds of hearsay. The court found that there was substantial evidence, independent of the statements at issue, that a conspiracy existed, that both defendants were members of the conspiracy and that the statements were made during the course and in furtherance of the conspiracy. Rec. vol. III at 101. The court subsequently restated its finding that the government had shown the existence of a conspiracy. Rec. vol. VII at 789.

■ Defendant apparently is arguing that the court failed to follow the "preferred order of proof"[3] by admitting co-conspirator hearsay before finding the existence of a conspiracy. That argument fails, primarily because the hearsay statements offered in the course of direct examination of Wells were admitted as admissions by Lambert. Even assuming the statements were admitted as co-conspirator hearsay, they would have been conditionally admissible subject to being connected up. *See United States v. Hernandez*, 829 F.2d 988, 994 (10th Cir.1987). The other statements which defendant now contends were improperly admitted were allowed after the trial court had found the existence of a conspiracy.

■ Defendant further claims that the government had not shown the existence of the conspiracy as charged. Co-conspirator hearsay is properly admitted if the trial court makes a factual determination that the government has established, by a preponderance of the evidence, that: 1) a conspiracy existed; 2) the declarant and the defendant were members of the conspiracy; and 3) the hearsay statements were made in the course and in furtherance of the conspiracy. *United States v. Esch*, 832 F.2d 531, 537 (10th Cir.1987). There was substantial evidence of the existence of a conspiracy. Ritschel and Bono testified that they had purchased large quantities of marijuana from Lambert and each testified about obtaining marijuana which had been stored in defendants' basement. Wells then testified that Pinto claimed ownership of the stolen marijuana. Wells' testimony, which was not hearsay as to Pinto, linked Pinto to the drug trafficking, which was an integral part of the alleged conspiracy to evade taxes on income generated by the sale and distribution of marijuana. The trial court did not err in admitting the contested testimony.

## III.

Defendant Pinto next claims that there was a fatal variance between the conspiracy as charged and the evidence adduced at trial, which she maintains indicated the existence of a second, uncharged conspiracy to possess, sell and distribute marijuana. Consequently, defendant argues, her convictions were based on a theory not charged in the indictment.

■ A variance occurs when the evidence presented at trial establishes facts different from those alleged in the indictment. *Dunn v. United States*, 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979); *United States v. Dickey*, 736 F.2d 571, 581 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). In assessing a claim of a fatal variance, the pivotal inquiry is whether there has been a variance in proof which affects the substantial rights of the accused. *United States v. Morris*, 623 F.2d 145, 149 (10th Cir.), *cert. denied*, 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980). This court has previously stated that such a variance occurs when the accused could not have anticipated from the indictment what evidence would be presented at trial. *Id.* "Another source of prejudice is the transference of guilt to an accused from incriminating evidence presented in connection with the prosecution of another in the same trial for a crime in which the accused did not participate." *Id.*

■ The indictment charged that "[t]he object of the defendants' conspiracy was to knowingly and willfully hide substantial income from the sale and distribution of marijuana and to evade the payment of taxes on that and other income," which was accomplished by creating the appearance that funds used to purchase the series of resi-

---

**3.** This court recently clarified the meaning of the term "preferred order of proof" as it pertains to the admission of co-conspirator hearsay. In *United States v. Hernandez*, 829 F.2d 988 (10th Cir.1987), we stated that the "preferred order of proof" simply refers to the requirement that the trial court make the requisite factual determination of the existence of a con-

spiracy prior to allowing co-conspirator hearsay statements to be heard by the jury. *Id.* at 994 n. 6. We further stated that "this order of proof does not involve a right to a pretrial hearing on admissibility, and in no way precludes the trial judge from exercising his considerable discretion and conditionally admitting the statements subject to later being connected up." *Id.*

dences came from loans when, as defendants knew, the funds came from the sale and distribution of marijuana. Rec. vol. I, doc. 1, at 2. In setting out the overt acts committed in furtherance of the conspiracy, the indictment alleged that during 1977, defendants possessed, sold and distributed, and aided and abetted in the possession, sale and distribution, of marijuana. *Id.* at 3. Although Pinto was not charged with conspiring to sell drugs, she could anticipate from the indictment what evidence would be presented at trial, in particular her involvement in the alleged overt act of possessing, selling and distributing marijuana. *United States v. Morris*, 623 F.2d at 149.

 Also meritless is Pinto's argument that she was prejudiced by an improper transference of guilt resulting from the evidence submitted on the tax evasion charges which indicated Lambert's post–1977 drug activities. As to the joint conspiracy charge, the evidence indicated that defendants acted in concert to effectuate the common illicit goal of evading taxes by concealing income derived from the sale and distribution of marijuana. *See United States v. Dickey*, 736 F.2d at 582. Pinto's allegation of prejudice arising from the evidence showing Lambert's likely source of income during the tax evasion indictment period is more pertinent to the issue of severance, and, in any event, the evidence of Lambert's post–1977 drug activities did not result in a transference of guilt affecting her substantial rights.

### IV.

 Defendant Pinto next contends that the trial court committed reversible error in denying her motion for severance. She argues that she was prejudiced by the great disparity in the weight of the evidence admitted solely against Lambert, the disparity being exacerbated by the fact of their marital relationship.

The general rule in this circuit is that individuals jointly indicted should be jointly tried. *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir.1985). The trial court's decision whether to sever is made within its sound discretion, and will not be reversed absent a strong showing of prejudice. *United States v. Esch*, 832 F.2d at 537. In ruling on a motion to sever, the trial court must weigh any potential prejudice caused by the joinder against considerations of economy and expedition in judicial administration. *Id.; United States v. Rinke*, 778 F.2d at 590.

The government presented the testimony and exhibits relating to the joint charges during the first portion of the trial, concluding with the summary testimony of IRS Special Agent Kenneth Wissel. The evidence that followed pertained to the tax evasion counts filed against Lambert. The government's order of proof facilitated the separation of the evidence and served to mitigate any potentially adverse effect of the evidence submitted solely against Lambert. Throughout the trial, the court admonished the jury to consider certain evidence only as to Lambert. As a result, the jury was able to compartmentalize the evidence as to each of the defendants and to properly apply it as the court instructed. *United States v. Pack*, 773 F.2d at 267.

Further, we cannot agree with Pinto's claim that her right to a fair trial was undermined by the disparity in the evidence against Lambert as compared to the alleged dearth of evidence implicating her. In a conspiracy case, a quantitative disparity in the evidence, without more, provides no justification for severance. *United States v. Hack*, 782 F.2d 862, 871 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). Given the government's order of proof, the trial court's continuous admonitions and the fact that the interests of judicial economy were served by the avoidance of duplicitous separate trials, the trial court did not abuse its discretion in denying the motion for severance.

### V.

 Both defendants next argue that the trial court erred in not dismissing the conspiracy count because the statute of limitations had expired before the charges

were filed on April 1, 1986. Their theory is that the offense of evading tax due on income derived from the sale and distribution of marijuana in 1977 was completed no later than April 15, 1978, the due date for the filing of their tax returns.

Under the Internal Revenue Code, the statute of limitations for a conspiracy to defraud the United States is six years. 26 U.S.C. § 6531;[4] *United States v. Brunetti*, 615 F.2d 899, 901–02 (10th Cir.1980). It therefore was incumbent upon the government to prove that the conspiracy was still in existence on April 1, 1980, and that at least one overt act in furtherance of the conspiracy was performed after that date. *Grunewald v. United States*, 353 U.S. 391, 396, 77 S.Ct. 963, 969, 1 L.Ed.2d 931 (1957); *United States v. Brunetti*, 615 F.2d at 901.

Defendants' theory, that the central purpose of the conspiracy was accomplished with the filing of the tax returns, ignores both the object of their conspiracy as charged in the indictment and the evidence presented at trial to establish the conspiracy. They were charged with conspiring to defraud the United States, in violation of 18 U.S.C. § 371,[5] "by impeding, impairing, obstructing, and defeating the lawful governmental functions" of the IRS "in the ascertainment, computation, assessment, and collection of income taxes...." Rec. vol. I, doc. 1, at 1. The indictment was based on one continuing conspiracy, the central object of which was not merely to evade taxes on marijuana income in 1978, but rather to immunize defendants from prosecution for tax evasion. *Forman v. United States*, 361 U.S. 416, 422–23, 80 S.Ct. 481, 485–86, 4 L.Ed.2d 412 (1960); *see*

*Grunewald v. United States*, 353 U.S. at 405, 77 S.Ct. at 974 (distinguishing between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy and acts of concealment done solely for the purpose of covering up the crime).

The object of defendants' conspiracy, the concealment of income derived from the sale and distribution of marijuana in 1977, did not end with the filing of their income tax returns in 1978. The filing of the returns was but the first step in the process of evading taxes on that income, with additional overt acts subsequently undertaken to conceal the marijuana income in an attempt to make the evasion succeed. *Forman v. United States*, 361 U.S. at 423–24, 80 S.Ct. at 485–86. Because at least one overt act was committed within six years prior to the filing of the indictment, the trial court properly denied defendants' motion to dismiss the conspiracy count. *United States v. Brunetti*, 615 F.2d at 901.

### VI.

Defendants' final contention is that the trial court erred by failing to give their tendered instruction setting out their theory of defense. Defendant Lambert also contends that the court erred in giving instruction 38, which addressed the cash expenditure method of proving tax evasion.

■ Jury instructions must be evaluated as a whole. *United States v. Grissom*, 814 F.2d 577, 580 (10th Cir.1987). The trial court is given substantial discretion in tailoring and formulating its instructions, so long as they correctly state the law and fairly and adequately cover the issues

---

4. 26 U.S.C. § 6531 provides in pertinent part: No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years—

(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;

. . . . .

(8) for offenses arising under section 317 of Title 18 of the United States Code, where the

object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof.

5. 18 U.S.C. § 371 provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

presented. *United States v. Pack,* 773 F.2d at 267. Although a defendant is entitled to an instruction regarding his theory of defense, the trial court need not follow the exact language in an instruction tendered by the defendant. *United States v. Hoffner,* 777 F.2d 1423, 1426 (10th Cir. 1985).

■ The defendants tendered the following instruction:

> If the evidence fails to establish beyond a reasonable doubt that defendants had taxable income from sales of marijuana in 1977 then you must find the defendants not guilty as to Count I.

In instructions 9 through 15, the court advised the jury of the law pertaining to the conspiracy charge. Rec. vol. II, doc. 78, at 23–31. Instruction 10 provided that the government had the burden of proving beyond a reasonable doubt every essential element of the crime charged, including the existence of the conspiracy charged in the indictment. *Id.* at 24. Instruction 2 contained the substance of the indictment, in which defendants were charged with conspiring to conceal income received in 1977 from the sale and distribution of marijuana. *Id.* at 4. While defendants reiterate their previously rejected claim that there was no evidence to show such income, the fact remains that the jury was properly instructed that it had to find beyond a reasonable doubt that defendants had income in 1977 from the sale and distribution of marijuana. The trial court did not err in refusing to give the tendered instruction when the substance of the instruction was contained in the charge given to the jury.

■ Regarding instruction 38, defendant Lambert contends that the instruction was erroneous because it failed to require the government to prove his net worth at both the beginning and end of the indictment period and in addition was confusing and internally inconsistent. Due to the government's employment of the cash expenditure method of proof, it was not required to present formal net worth statements. *United States v. Citron,* 783 F.2d at 315; *Taglianetti v. United States,* 398 F.2d at 564–66. As to Lambert's corollary

contention, we note that he did not submit a tendered instruction on the cash expenditure method of proof, and conclude that the trial court's instruction was neither confusing nor inconsistent, but rather properly directed the jury to determine whether expenditures in excess of reported income could be accounted for by assets available at the outset of the prosecution period. *See Taglianetti v. United States,* 398 F.2d at 565–66.

AFFIRMED.