881 F.2d 1546
 UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Eugene STAGGS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles David TEAFATILLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peggy Savage TEAFATILLER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank E. GABRIEL, Defendant-Appellant.
 Nos. 88-1275, 88-1469, 88-1471 and 88-1473.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 7, 1989.
 
 Sheldon J. Sperling, Asst. U.S. Atty. (Roger Hilfiger, U.S. Atty., with him on the brief), Muskogee, Okl., for plaintiff-appellee.
 Richard F. Aguire (Emmett Colvin with him on the brief), Dallas, Tex., for defendants-appellants.
 Before MOORE, ANDERSON and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 This case was assigned originally to this three-judge panel for the purpose of considering six issues raised by the appellants. Prior to the issuance of an opinion by the panel, the judges of the Tenth Circuit voted sua sponte to hear before the en banc court one of those issues as follows:
 
 
 2
 Whether a continuing criminal enterprise indictment which tracks the language of the statute and contains three violations underlying the series in another count of the indictment is sufficient to charge a continuing criminal enterprise offense under 21 U.S.C. Sec. 848, consistent with the requirements for an indictment under the fifth and sixth amendments of the Constitution.
 
 
 3
 Because the issues are thus divided for consideration between the en banc court and the three-judge panel, we discuss them in separate opinions, filed this day. The first opinion contains the factual background, not repeated here, and addresses the en banc question, answering it in the affirmative and affirming the continuing criminal enterprise (CCE) convictions of appellants Teafatiller and Staggs. See 881 F.2d 1527 (10th Cir.1989). The issues remaining for the panel's consideration are discussed below.
 
 
 4
 In addition to the en banc question regarding the sufficiency of the CCE indictment, the appellants raise five issues on appeal. First, Teafatiller and Staggs argue that their respective conspiracy convictions, being lesser included offenses of the CCE offense, should be vacated. Second, while not seeking reversal on this point, Teafatiller seeks correction of the judgment and commitment order filed after trial because the sentence reflected therein differs from that orally rendered by the trial judge. Third, all appellants claim the case should be remanded for a hearing to determine whether the government acted outrageously by seeking the cooperation of an attorney who, according to appellants, had formerly represented them. Fourth, Gabriel argues that the testimony of Sharon Gabriel was admitted in violation of the marital privilege. Lastly, Gabriel contends that the evidence is insufficient to support his conviction on the conspiracy count.
 
 I.
 
 5
 Teafatiller and Staggs argue that their conspiracy convictions should be vacated, as a conspiracy to commit drug offenses under 21 U.S.C. Sec. 846 is a lesser included offense of the crime of continuing criminal enterprise, defined at 21 U.S.C. Sec. 848. We agree that the separate conspiracy conviction under 21 U.S.C. Sec. 846 of both Teafatiller and Staggs should be vacated. United States v. Stallings, 810 F.2d 973, 975-76 (10th Cir.1987). Accordingly, we remand to the trial court for the purpose of vacating the separate convictions of Teafatiller and Staggs on the lesser included conspiracy offense and "combining" those conspiracy convictions with the CCE convictions of the appellants. See United States v. Benevento, 836 F.2d 60, 73 (2d Cir.1987) (separate conspiracy conviction vacated and "combined" with CCE conviction, the lesser included conviction only having effect should the CCE conviction be subsequently overturned), cert. denied, --- U.S. ----, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988), abrogated on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989); United States v. Aiello, 771 F.2d 621, 632-34 (2d Cir.1985) (same).
 
 II.
 
 6
 Second, Teafatiller asserts that the judgment and commitment order filed March 17, 1988, is inconsistent with the sentence rendered by the trial court after the jury's finding of guilt. The trial court ordered the sentence on the CCE count to be served concurrently with all other sentences, rec. vol. XV at 28-29, but Teafatiller complains that the judgment and commitment order filed after the trial contradicts itself and the trial court's sentence by first indicating that the CCE sentence will be served consecutively with all others and later that it will be served concurrently with the other sentences. The government in its brief acknowledges that a "scrivener's error" in the judgment and commitment order has been corrected, and its brief includes a copy of the corrected order which properly reflects the trial court's actual sentence. While this would seem to resolve the issue, Teafatiller continues to seek relief, contending that because the erroneous judgment and commitment order remains a document of record, there is no assurance that the incorrect document will not be followed by the penal authorities. We need only say that the unambiguous oral sentence of the trial court, as modified by the trial court pursuant to this opinion, controls over the written order, and it is the sentence to be implemented. United States v. Villano, 816 F.2d 1448, 1450 (10th Cir.1987) (en banc). Should this not occur, Teafatiller may seek appropriate relief.III.
 
 
 7
 Appellants' next contention relates to the government's investigative contact with an attorney who the appellants claim represented them prior to trial. Appellants, in various pretrial motions, claimed that government agents obtained from the attorney privileged communications in violation of the appellants' attorney-client privilege. According to appellants, the government's pursuit of such protected disclosures resulted in outrageous governmental conduct violative of appellants' fifth amendment due process rights. Appellants note that these motions were denied after hearings and apparently do not appeal these denials directly, but instead cite United States v. Fortna, 796 F.2d 724 (5th Cir.), cert. denied, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986), for the proposition that "when there is information that the Government received evidence concerning breach of the attorney-client relationship the Court should conduct a full hearing as to such breach and any prejudice flowing therefrom."[1] Brief for Appellants at 15. Appellants claim they were not afforded such a hearing because 1) the attorney, whom they had subpoenaed, did not appear, and 2) appellants' subpoenas of government counsel were quashed by the trial court. The authority cited, however, does not bear out appellants' claim.
 
 
 8
 In Fortna, the appellant claimed that the government obtained information from the appellant's alleged attorney in violation of appellant's right to due process, privilege against self-incrimination, and right to an attorney. At a hearing on this matter, the trial court determined that there was no attorney-client relationship and denied the appellant's request for a subpoena. Fortna, 796 F.2d at 729. On appeal, the Fifth Circuit reversed, holding that without good cause being shown, the trial court erred in denying the appellant the "normally available right" to subpoena a witness. Id. at 731.
 
 
 9
 In the instant case, unlike Fortna, the trial court did not intervene to deny appellants' rights. The attorney, subpoenaed by appellants, simply failed to attend the hearing. In Minetos v. Scully, 625 F.Supp. 815 (S.D.N.Y.1986), a petitioner in a habeas action claimed that he was denied his constitutional right to compulsory process when the trial court failed to grant a continuance allowing the petitioner to procure an absent witness. Because the petitioner had never requested a continuance in the first place, however, the court held that "petitioner cannot now claim that he was denied compulsory process of a witness he never requested the trial court to produce." Id. at 819. Appellants do not appeal the denial of a continuance here, for like the petitioner in Minetos, they did not request one. They rested at the close of the hearing and cannot now be heard to complain that the attorney's absence deprived them of a fair hearing. The appellants suggest that the hearing was unfair because of the trial court's decision to quash appellants' subpoena of government counsel who had contact with the attorney, but appellants offer neither facts nor law indicating that the decision to quash was itself erroneous. Based upon the record before us, appellants do not convince us that the hearing was inadequate.
 
 IV.
 
 10
 Appellant Gabriel contends next that the trial court erred in admitting the testimony of Sharon Gabriel (Sharon) in violation of the marital communication privilege. The application of this privilege depends upon the existence, at the time of the communication in question, of a valid marriage as determined by applicable state law. United States v. Lustig, 555 F.2d 737, 747 (9th Cir.1977), cert. denied, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). Sharon testified that she was divorced from Gabriel in 1984, prior to the time frame of the conspiracy count, when Gabriel related to Sharon the substance of her testimony. Gabriel contends, however, that a common law marriage existed under Oklahoma law because subsequent to their divorce 1) Sharon and Gabriel continued to have sexual relations, 2) Sharon filed a joint tax return with Gabriel for the tax year 1985, and 3) Sharon signed a mortgage document in 1987 declaring herself to be the wife of Gabriel.
 
 
 11
 The government contends that Sharon and Gabriel did not live together after their 1984 divorce, but the appellant argues, without citation to authority, that despite Sharon's insistence on that point, "living together or apart is not an element of a common law marriage under Oklahoma law." Brief of Appellants at 23. Gabriel's research failed to disclose In re Estate of Stinchcomb, 674 P.2d 26 (Okla.1983), which states that a party asserting common law marriage must prove by clear and convincing evidence, among other things, that the alleged spouses cohabited as man and wife. Id. at 29; accord In re Estate of Phifer, 629 P.2d 808, 809 (Okla.Ct.App.1981). Sharon's testimony that there was no such cohabitation stands unrebutted, and the appellant seems to accept that fact, arguing only that it has no legal significance. As we find that it does, we affirm the trial court's denial of Gabriel's assertion of the marital communication privilege. See United States v. Rhodes, 569 F.2d 384, 389 (5th Cir.) (denial of marital privilege upheld when trial court found that no common law marriage existed under state law), cert. denied, 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978).
 
 V.
 
 12
 Finally, Gabriel argues that the evidence was insufficient to support his conviction on the drug conspiracy count. We evaluate the sufficiency of the evidence by viewing all evidence, both direct and circumstantial, along with the reasonable inferences to be drawn therefrom, in the light most favorable to the government. United States v. Pinto, 838 F.2d 426, 429 (10th Cir.1988). Considering the evidence in that light, we then must determine whether a reasonable jury could have found the appellant guilty beyond a reasonable doubt. Id.
 
 
 13
 The essence of a drug conspiracy is an agreement between two or more persons to commit federal drug offenses. United States v. Savaiano, 843 F.2d 1280, 1294 (10th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988). The evidence, whether direct or circumstantial, "must support a finding that the conspirators had a unity of purpose or a common design or understanding." Pinto, 838 F.2d at 430. Because a criminal conspiracy by its nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence. Savaiano, 843 F.2d at 1293 (citing United States v. Andrews, 585 F.2d 961, 964 (10th Cir.1978)).
 
 
 14
 Sharon testified that around August 1986, Gabriel told her that "he was going to bring some people in to start making amphetamine." Rec. vol. X at 375-76. According to Sharon's testimony, Gabriel wanted to make some money and told her that "they were going to start cooking." Id. at 376. Sharon indicated that Gabriel was involved with a John Williams, not indicted or identified as a conspirator herein, who "brought some men in." Id. Sharon testified further that Gabriel mentioned the names of appellants Rusty Teafatiller and Donald Staggs in connection with the manufacture of amphetamine, and that according to Gabriel, these were the men brought in by John Williams to set up a "lab." Id. at 378. This lab, according to Sharon, was set up in a "dairy barn" on a 240-acre tract of property owned at the time of trial by Gabriel. Id. at 378-79. Gabriel updated Sharon every day regarding the "cooking," how much money was being made, and that he expected to make "big money." Id. at 380. Sharon testified that she traveled with Gabriel "a couple of times" to collect money for the sale of amphetamine that had been cooked. Id. at 387. She indicated also that she received from Gabriel one to two thousand dollars per month obtained from the sale of drugs. Id. at 386.
 
 
 15
 DEA special agent Dorsey Shannon testified that he conducted a search on the property of Gabriel, finding in an outbuilding "an extensive array of laboratory equipment," rec. vol. XI at 478, and chemicals, all of which in his opinion were of the type used in the manufacture of amphetamine. Id. at 484. Agent Shannon also found in the building used as Gabriel's actual residence a roomful of equipment "laid out as though the room were operational, or could be operational," and in Shannon's opinion "used to powder out and to dry and package the amphetamine." Id. at 488.
 
 
 16
 The evidence suggests that Gabriel voluntarily took part in illicit drug activities, and the decisive issue is whether the evidence supports the inference that he agreed with others to do so. The support for that inference comes from Sharon's testimony that Gabriel told her of his involvement with a John Williams, who brought in appellants Teafatiller and Staggs to set up a lab. This testimony, while not showing an agreement directly, provides a sufficient circumstantial link between Gabriel and the conspiracy charged in the indictment. Savaiano, 843 F.2d at 1294 (connection of defendant to conspiracy need only be slight if evidence establishes that connection beyond a reasonable doubt). The evidence was sufficient for a rational trier of fact to convict Gabriel, and we affirm the jury's finding of guilt.
 
 
 17
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 After claiming that a hearing is needed to evaluate a possible breach of the attorney-client privilege and the resultant prejudice, appellants contend in the next paragraph that if a sixth amendment violation were established, a court need not determine whether there was sufficient prejudice to dismiss the indictment. Brief for Appellants at 15. To the contrary, the Fortna court stated that "even if [appellant] were to establish a Sixth Amendment violation, the district court would need to determine whether there was sufficient prejudice to dismiss the indictment." Fortna, 796 F.2d at 731 (emphasis added)