974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis R. PORTH, Defendant-Appellant.
 No. 91-1427.
 United States Court of Appeals, Tenth Circuit.
 Aug. 28, 1992.
 
 Before JOHN P. MOORE, McWILLIAMS and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 Dennis R. Porth (Porth) appeals his convictions on three counts of willfully making and subscribing to false statements on joint income tax returns and aiding and abetting in violation of 26 U.S.C. § 7206(1)[1] and 18 U.S.C. § 2[2].
 
 
 2
 Porth and his ex-wife Sylvia were charged in a three count indictment with willfully making and subscribing to false statements on their income tax returns for 1983, 1984, and 1985. Sylvia pled guilty to a misdemeanor. Porth waived his right to a jury trial. Trial was to the court.
 
 
 3
 Prior to trial, the parties stipulated that: during the three tax years in question Porth was engaged in the business of process serving; Porth's gross receipts from the process serving business for the three years were approximately $50,291.40, $58,766.45, and $50,299.19, respectively; the total net income to Porth for process serving for the three years was approximately $16,319.97, $24,649.07, and $20,761.67, respectively; the total taxable income figures on the Porth's' tax returns for 1983, 1984, and 1985, i.e. $12,000 per year, were materially false unless Porth was entitled to deduct gambling losses from other, non-gambling sources of income.
 
 
 4
 During trial, Porth testified that: he grew up on a farm and had a high school education; he was a professional gambler; gambling constituted his sole livelihood from 1961 to 1980; he took his first job, other than gambling, as a process server in 1980; Sylvia, who had a college degree in accounting, became involved in the process serving business in 1982 and performed secretarial and bookkeeping functions; during 1983, 1984, and 1985, he gambled on a regular basis and incurred substantial gambling losses; he never prepared any of their joint tax returns; the returns were prepared by a professional return preparer or by Sylvia; Sylvia prepared the joint income tax returns for the years in question; he gave Sylvia the amount of his gambling losses for each year in question and relied upon her, as the bookkeeper of the process serving business, to come up with the correct net figure; he never reviewed the returns in question but rather relied on Sylvia for the accurate preparation of the returns; and he thought the returns were correctly prepared at the time they were filed.
 
 
 5
 Sylvia testified on behalf of the government that: Porth told her that they could net his gambling losses against his process serving income; she had no information about his gambling; Porth told her to use $12,000 as the amount of their income because he could afford to pay the taxes due on that amount; and she prepared the returns in accordance with Porth's directions because he was running things.
 
 
 6
 Following a four day trial, the district court announced its findings of fact and conclusions of law, finding/concluding: it is essentially undisputed that Porth made and signed the returns for each year in question; it is undisputed that each return was made subject to the penalties of perjury; the returns were so blatantly erroneous and inconsistent as to be false on their face; Sylvia's testimony that Porth selected an income figure of $12,000 for each of the years in question by looking at the tax tables and arriving at a round figure which matched the amount of tax Porth wanted to pay was a more credible explanation than any other explanation heard of the manner in which the income figures were derived; in addition to the fact that the identical amount of income was used each year, no Schedule C's were attached to any of the returns even though a Schedule C had been attached in prior years; the amount of income reported was ridiculously low compared with the lifestyle of the Porths.
 
 
 7
 The district court also found/concluded: Porth's explanation that Sylvia prepared all the returns and that he signed them without reading them is not persuasive; Sylvia was not so domineering in their relationship that she prepared all of the returns and Porth had nothing to do with them; Porth's "Sylvia defense" was inconsistent with his interview with a special IRS agent during which he related that the returns were prepared by both of them and that the returns were true and accurate; the lack of use of W-2s, 1099's, and other tax forms was consistent with a finding that there was a scheme here to conceal and not report the true income of the business; there was nothing approaching adequate records; Sylvia was not the kind of person who could hatch and carry out the type of scheme Porth attributed to her; if Porth had actually been in the business of gambling, as opposed to being addicted to gambling or gambling recreationally, he would have shut down the business after losing money three years in a row; Porth's gambling profits were pitifully small and it was ludicrous for him to claim gambling as his primary business; Porth did not produce records that there was a bona fide gambling business; one could infer that Porth's summary records had been recently created.
 
 
 8
 The court found Porth guilty as charged on all three counts. Porth was sentenced to fourteen months imprisonment on Count I (tax year 1983), and placed on five years probation to run concurrently on Counts II (tax year 1984) and III (tax year 1985).
 
 
 9
 On appeal, Porth contends that: (1) the district court erred in concluding that the tax returns in question were materially false with respect to the total income reported; (2) he did not act willfully and did not believe that his tax returns were false; and (3) the district court erred in finding him guilty on the conspiracy counts.
 
 
 10
 At the outset, we observe that we view all the evidence, both direct and circumstantial together with the reasonable inferences to be drawn therefrom, in the light most favorable to the government. United States v. Pinto, 838 F.2d 426, 429 (10th Cir.1988). Moreover, we defer to the findings of the district court as the trier of fact:
 
 
 11
 As the trier of fact, the jury was entitled to disbelieve [defendant] West's uncorroborated and confused testimony. In evaluating that testimony, moreover, the jury was entitled to ... take into account West's demeanor when testifying, which neither the Court of appeal nor we may review. And if the jury did disbelieve West, it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt....
 
 
 12
 In Jackson [v. Virginia, 443 U.S. 307 (1979) ], we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution ..."; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt ..." and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution...."
 
 
 13
 Wright v. West, --- U.S. ---- (June 19, 1992) (Sl.Op. at pp. 17-18).
 
 I.
 
 14
 Porth contends that the district court erred in concluding that the income tax returns in question were materially false with respect to the total income reported. Porth contends that since he was engaged in the trade or business of professional gambling during the years in question he should be allowed to offset his process serving income with his gambling losses.
 
 
 15
 The essence of the crime under § 7206(1) is the filing of a verified tax return knowing that it is false and fraudulent as to a material matter. Mertens Law of Federal Income Tax, § 55A.07. § 7206(1) prohibits affirmative false statements and also knowing and willful omission of material matter. United States v. Tager, 479 F.2d 120, 122 (10th Cir.1973), cert. denied, 414 U.S. 1162 (1974). Under § 7206(1), it is a felony for any person to "willfully" file a tax return "which he does not believe to be true and correct as to every material matter...." A person acts "willfully" under § 7206(1) when he or she intentionally violates a known duty. United States v. Pomponio, 429 U.S. 10, 12 (1976). Proof of evil motive is not required. Id. A tax return which omits material items necessary to the computation of income is not "true and correct" under § 7206(1). Siravo v. United States, 377 F.2d 469, 472 (1st Cir.1967).
 
 
 16
 The "government is not required to document [a] defendant's financial affairs to an absolute certainty before he can be convicted" under § 7206(1). United States v. Notch, 939 F.2d 895, 899 (10th Cir.1991). Moreover, "[w]illfullness to defeat or evade federal income taxes may be inferred from ... handling of one's affairs to avoid making records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal." United States v. Samara, 643 F.2d 701, 704 (10th Cir.), cert. denied, 454 U.S. 829 (1981).
 
 
 17
 Applying these standards to the facts herein, viewing all of the evidence in the light most favorable to the government, United States v. Pinto, and deferring to the findings of the district court as the trier of fact, Wright v. West, we hold that the evidence was sufficient to sustain the district court's findings that the returns were so blatantly erroneous and inconsistent as to be false on their face in violation of § 7206(1). We specifically affirm the district court's findings that:
 
 
 18
 I do not think that Mr. Porth thought that he was in the business of gambling in good faith. I do not believe that he took these deductions in good faith. I do not believe that he honestly thought he could deduct gambling losses and expenses in excess of his gambling (sic) income. I do not believe that he in good faith thought that the total income reported in each of these three years was his true total income. To the contrary, the returns on their face are false returns.
 
 
 19
 (R., Vol. V. at p. 613).
 
 II.
 
 20
 Porth contends that he "did not act willfully [under § 7206(1) ] because he reasonably believed that he could net his gambling losses with the income from his other business, and he did not believe the returns were false." (Brief For Appellant at p. 19).
 
 
 21
 Porth's counsel acknowledged during oral argument that the returns were materially false. We need not address Porth's contention that he was entitled to net his gambling losses from his other business income because we affirm the district court's findings that Porth's returns were so blatantly erroneous and inconsistent as to be false on their face.
 
 III.
 
 22
 Porth contends that the district court erred in finding him guilty of conspiracy. No such finding was made by the district court. Porth is, we believe, challenging his convictions of aiding and abetting in violation of 18 U.S.C. § 2. In advancing this contention, Porth argues that "the Court should reverse the conspiracy conviction if it reverses the substantive convictions." (Brief for Appellant at p. 25.) This contention is rendered moot by our affirmance of the substantive, § 7206(1) convictions.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 § 7206(1) provides:
 Any person who--
 Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;
 
 
 [2]
 § 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.