**UNITED STATES of America, Plaintiff,**

v.

**LOUISIANA PACIFIC CORPORATION, Dana Dulohery, and Robert Mann, Defendants.**

**Crim. A. No. 95–CR–215–B.**

United States District Court, D. Colorado.

Nov. 28, 1995.

Henry L. Solano, United States Attorney, John Haried, Brenda Taylor, Assistant U.S. Attorneys, Denver, CO, for Plaintiff.

Patrick J. Burke, Law Office of Patrick J. Burke, Denver, CO, Elliott R. Peters, Keker & Van Nest, San Francisco, CA, for Defendant Louisiana Pacific.

John M. Richilano, Dean S. Neuwirth, Denver, CO, for Defendant Dulohery.

Michael R. Enwall, Barbara K. Grant, Boulder, CO, for Defendant Mann.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants Louisiana Pacific Corporation (LPC), Dana Dulohery and Robert Mann (defendants) move pursuant to Fed. R.Crim.P. 12(b)(2) to dismiss counts one through thirty-one of the indictment. In Count I defendants are charged with conspiracy to violate § 7413(c)(2) of the Federal Air Pollution and Control Act, 42 U.S.C. § 7401 et. seq. (the Clean Air Act or CAA) and 18 U.S.C. § 1001. Counts 2 through 21 charge defendants with violation of 42 U.S.C. § 7413(c)(2)(C) (tampering with a monitoring device and method) and 18 U.S.C. § 2 (aiding and abetting). Counts 22 through 27 charge defendants with violation of 42 U.S.C. § 7413(c)(2)(A) (false statements under the CAA) and 18 U.S.C. § 2. Defendants LPC and Dulohery are charged in counts 28 through 31 under § 7413(c)(2)(A) and 18 U.S.C. § 2 with making false statements con-

cerning phenolic formaldehyde (resin) excee-dances of two percent of board weight.

Defendants LPC and Dulohery are charged in counts 32 through 55 with mail fraud in violation of 18 U.S.C. §§ 1341 and 2, and LPC is charged in count 56 with wire fraud in violation of 18 U.S.C. §§ 1341 and 2. The underlying scheme alleged in counts 32 through 56 is that LPC and Dulohery falsely represented to LPC customers through use of the American Plywood Association (APA) trademark on the Montrose mill's oriented strand board (OSB) products and in LPC advertising and marketing materials that these products had been subjected to con-tinuing quality assurance testing and audit-ing in conformance with APA procedures and standards. In fact, the government alleges, LPC and Dulohery routinely submitted non-representative, specially manufactured OSB samples to APA for testing instead of sam-ples of OSB sold to LPC customers. I will refer at times to counts 1 through 31 as the CAA counts, counts 28 through 31 as the resin counts and counts 32 through 56 as the APA counts.

Defendants jointly move to sever the CAA counts from the APA counts. Mann moves that his trial on the CAA counts be severed. Defendants also move to strike portions of the indictment. The motions are briefed and argued. For the reasons that follow I will grant in part and deny in part the motion to dismiss and sever for trial the CAA counts remaining from the APA counts. Mann's severance motion will be denied as moot. The motion to strike will be held in abeyance pending further briefing.

### I.

LPC manufactures OSB at its Montrose mill, also referred to as the Olathe Plant. During the manufacturing process pine and aspen are sent to a "wafer dryer" which combusts wood and sawdust to produce a hot exhaust gas that dries the chips, which are then mixed with resins and hot-pressed into OSB. Pollutants are emitted into the air as a result of this process. As such, the Mont-rose mill qualifies as a stationary source un-der the CAA. 42 U.S.C. § 7411(a)(3).

On January 26, 1988 the Colorado Depart-ment of Health (CDH) issued LPC an emis-sion permit (the '88 permit) for the Montrose mill. The '88 permit limits visible emissions to 20% opacity. To meet this standard, the permit required the Montrose mill to use pollution control technology known as an electrified filter bed (EFB) to filter out parti-cles before discharging the emissions into the atmosphere. The CDH requires that a source meet the 20% opacity limitation 95% of operating time to be considered "in com-pliance."

To monitor compliance with the emission limitation the permit imposed the following condition:

A continuous opacity monitoring system [COMS], approved by the Division, shall be installed to measure and record the opacity of emissions being discharged to the atmo-sphere. The monitoring system shall be located, calibrated, maintained and operat-ed in accordance with methods and proce-dures approved by the Colorado Air Quali-ty Control Regulations. Excess emission reports shall be filed on a quarterly basis in a format approved by the Division. De-fendants Motion to Dismiss; Exh. 1.

A COMS uses a beam of light to measure the amount of light dispersed by the emission of pollutants. These emissions are read and graphically charted at six minute intervals. Each quarter LPC was required to file these COMS reports with the CDH. Any emission in excess of the 20% limit received a code explaining the cause of the exceedance. Ex-cusable excesses included #9—testing, #10—monitor failure, #12—upset condi-tions, and #14—cleaning EFB. The excusa-ble exceedances were deducted from the total time for noncompliance to determine whether the 95% compliance requirement was achieved.

In 1989 LPC received several Notices of Violation (NOVs) from the CDH stating that LPC had violated the 20% opacity limitation. Based on these NOVs, the CDH issued two orders for compliance to LPC. To resolve the compliance orders and NOVs, LPC and the CDH entered into a settlement agree-ment (the 1990 agreement). Pursuant to the 1990 agreement, LPC agreed to hire an inde-

pendent contractor to conduct EPA Method 9 opacity readings on a weekly basis. Defendant's Motion to Dismiss, Exh. 1, p. 6, ¶ 4. A Method 9 observation is a visual opacity reading made by an individual certified by the state. During the term of the 1990 agreement, penalties would be assessed based on observations from either the independent contractor or the CDH. Defendant's Motion to Dismiss, Exh. 1, p. 7. ¶ 5. These observations were the "sole means by which the Division may enforce wafer dryer opacity violations at the Olathe plant." Defendant's Motion to Dismiss, Exh. 1, p. 8. The 1990 agreement required LPC to "use its best efforts to maintain its wafer dryers in full compliance with the opacity regulations." Id. It did not address or alter the conditions of the '88 permit.

LPC was issued a second permit on January 21, 1992 (the '92 permit) which canceled the '88 permit. The '92 permit does not require a COMS. Instead, it requires the installation of a camera system to monitor visual impacts of the facility's plume. Plaintiff's Response, Exh. 11, ¶ 8.

During the term of the '88 permit the government alleges that the defendants knowingly falsified the COMS reports and tampered with the COMS equipment to achieve low opacity readings. While neither admitting nor denying these allegations, the defendants assert that counts 1–27 of the indictment must be dismissed because the 1990 agreement dropped the COMS requirement and the COMS reporting requirements are not part of the Colorado State Implementation Plan (SIP). Therefore, they contend these COMS requirements are not federally enforceable. Defendants argue that counts 28–31 must be dismissed because there is no resin reporting requirement in the permit, the 1990 agreement, or the SIP. In essence, then, the defendants contend counts 1 through 31 do not charge federal crimes. Defendants also assert that, in any event, counts 20, 21 and 25 through 27 must be dismissed because the conduct constituting the violation occurred after the issuance of the 1992 permit which did not require COMS reports. Finally the defendants contend that counts 1 through 31 must be dismissed be-cause the reporting requirements were unconstitutionally vague or, in the alternative, they were immaterial as a matter of law.

## II.

In addition to the charge of conspiracy to violate §§ 7413(c)(2)(A) and (C) of the Clean Air Act and 18 U.S.C. § 1001 defendants are charged with numerous independent tampering and false reporting violations of § 7413(c)(2)(A) and (C) of the CAA. Section 113(c)(2)(A) and (C) provide:

> Any person who knowingly—(A) makes a false material statement, representation, or certification in, or omits material information from, or knowingly alters, conceals, or fails to file or maintain any notice, application, record, report, plan, or other document required pursuant to this chapter to be either filed or maintained (whether with respect to the requirements imposed by the Administrator or by a State); (C) falsifies, tampers with, renders inaccurate, or fails to install any monitoring device or method required to be maintained or followed under this chapter shall upon conviction, be punished by a fine pursuant to title 18, or by imprisonment for not more than 2 years, or both.

The Government alleges that defendants knowingly falsified COMS reports and knowingly tampered with the COMS at the Montrose mill causing it to measure and record falsely low values for opacity on the strip charts that were filed with the CDH. The defendants assert that the COMS reporting requirements are not federally enforceable because they are not part of the SIP. Moreover, the defendants argue that the conditions imposed on LPC are state-imposed requirements which exceed federal requirements and are, therefore, enforceable only under state law pursuant to C.R.S. § 25–7–105(8) (1984). The question is whether the CDH's COMS monitoring and reporting requirements were imposed pursuant to authority delegated under the CAA to the CDH so as to render them federally enforceable.

A. Delegation of Authority to State under the CAA.

■ The Clean Air Act provides for a dual federal-state scheme to protect and enhance

the nation's air quality. 42 U.S.C. § 7401(b). The Administrator of the Environmental Protection Agency (The Administrator or EPA) promulgates national primary ambient air quality standards which are to be maintained under all state programs. Each state must adopt "a plan [SIP] which provides for implementation, maintenance, and enforcement" of these standards. 42 U.S.C. § 7410(a)(1). The Administrator and the state retain jointly the power to implement and enforce the SIP. 42 U.S.C. § 7413.

Section 7414 grants broad authority to the Administrator to ensure compliance with the CAA through *recordkeeping, monitoring, and inspections*. 42 U.S.C. § 7414. Section 7414 provides:

> [F]or the purpose (i) of developing or assisting in the development of any implementation plan under section 7410 ... and standard of performance under section 7411 of this title, [or] any emission standard under section 7412 of this title, ... (ii) of determining whether any person is in violation of such standard or any requirement of such a plan, or (iii) carrying out any provision of this chapter ... (1) the Administrator may require *any* person who owns or operates *any* emission source ... on a one-time, periodic or continuous basis to—(A) establish and maintain such records; (B) make such reports; (C) install, use and maintain such monitoring equipment, and use such audit procedures, or methods; (D) sample such emissions (in accordance with such procedures or methods, at such locations, at such intervals, during such periods and in such manner as the Administrator shall prescribe); (E) keep records on control equipment parameters, production variables or other indirect data when direct monitoring of emissions is impractical; (F) submit compliance certificates in accordance with section 7414(a)(3) of this title; and (G) provide such other information as the Administrator may reasonably require. 42 U.S.C. § 7414(a)(1). (emphasis added).

Thus, the Administrator can impose monitoring and reporting requirements on any individual operator of any emission source pursuant to this section. The recordkeeping, inspections and monitoring authority in § 7414 can be delegated to a state by the Administrator when the Administrator finds the state procedure adequate. 42 U.S.C. § 7414(b)(1). When such delegation occurs, the Administrator retains concurrent power to enforce the provisions of § 7414. 42 U.S.C. § 7414((b)(2).

To be approved by the Administrator, a SIP must meet the requirements of § 7410 of the CAA. 42 U.S.C. § 7410. Section 7410(a)(2)(F) provides that the SIP "shall require, as may be prescribed by the Administrator—(i) the installation, maintenance, and replacement of equipment, and the implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources, (ii) periodic reports on the nature and amounts of emissions and emissions-related data from such sources, and (iii) correlation of such reports by the State agency with any emission limitations or standards established pursuant to this chapter, which reports shall be available at reasonable times for public inspection." 42 U.S.C. § 7410(a)(2)(F). The regulations further expand this requirement stating "Each plan must show that the State has legal authority to carry out the plan, including authority to: (e) obtain information necessary to determine whether air pollution sources are in compliance with applicable laws, regulations, and standards, including authority to require record-keeping and to make inspections and conduct tests of air pollution sources. (f) Require owners or operators of stationary sources to install, maintain, and use monitoring devices and to make periodic reports to the State on the nature and amounts of emissions from such stationary sources." 40 C.F.R. § 51.230(e) & (f). Section 51.231(c) of the regulations states that "legal authority adequate to fulfill the requirements of § 51.230(e) and (f) of this subpart may be delegated to the State under section 114 of the Act." 40 C.F.R. § 51.231(c).

Consistent with the requirement of § 7410(a)(2)(F) and the regulations, the Common Provisions Regulations of the Colorado Air Quality Control Commission provide that the CDH "may require owners or operators

of stationary air pollution sources to install, maintain, and use instrumentation to monitor and record emission data as a basis for periodic reports to the Division." Colorado Common Provision, Section II, B. This regulation was adopted pursuant to the C.R.S. § 25–7–106(6) which provides:

The commission may require the owner or operator, or both, of *any* air pollution source to: (a) Establish and maintain monitoring equipment or methods as prescribed by the commission; (b) Install, use, and maintain monitoring equipment or methods as prescribed by the commission; (c) Record, monitor, and sample emissions in accordance with such methods, at such locations, at such intervals, and in such manner as the commission shall prescribe; (d) Provide such other information as the commission may require. (emphasis added)

The '88 permit issued to LPC was issued pursuant to the terms of Colorado's air quality Regulation No. 3, 5 C.C.R. § 1001–5. This regulation is part of Colorado's approved SIP for the enforcement of the national ambient air quality standards.

Defendants argue that the COMS monitoring and reporting requirements were not part of the SIP and, therefore, are not federally enforceable. The defendants further argue that under C.R.S. § 27–5–105(8) (1981) the COMS requirements are more stringent than required under federal law and, therefore, enforceable only under state law. I disagree.

Under the CAA and its implementing regulations, "federally enforceable" requirements include "all limitations and conditions which are enforceable by the Administrator . . . including operating permits issued under an EPA-approved program that is incorporated into the State implementation plan and expressly requires adherence to any permit issued under such program." 40 C.F.R. § 51.166(b)(17). The District of Columbia recently addressed the enforceability of state-imposed requirements in *National Min. Ass'n v. U.S. E.P.A.*, 59 F.3d 1351 (1995). The court held that "Once included within the SIP, a state control becomes enforceable not only by the state which is its

primary regulating authority, but also by the Administrator under § 113 of [the] Act, 42 U.S.C. § 7413 . . . ." *Id.* at 1363. "Constraints imposed upon a source under a state operating permit, for example, will be deemed 'federally enforceable' if the state program has been approved as a 'federally enforceable state operating permit program,' or FESOPP, by EPA. A state permitting program cannot stand alone; it must be incorporated into the SIP, must impose upon sources a legal obligation to observe the permit constraints, must be enforceable as a practical matter—i.e., must be 'effective'— must not be inconsistent with other requirements under the SIP or federal law, and must be issued pursuant to a public hearing process."

The '88 permit unequivocally and unambiguously requires that LPC install a COMS at the Montrose mill to measure and record emissions into the atmosphere. The permit further requires LPC to file excess emission reports on a quarterly basis with the CDH. These requirements were imposed pursuant to the CDH's authority under C.R.S. § 25–7–106(6) and the Common Provisions Regulations which are part of the Colorado SIP. The '88 permit was issued pursuant to the Colorado SIP which is an approved permitting program. The permit requires adherence to its terms to maintain its viability and warns that violations of the terms may result in administrative, civil or criminal enforcement actions.

Defendants argue that even if CDH had the authority under Common Provision II.B. to impose COMS requirements on LPC, it failed to comply with the requirements of 40 C.F.R. § 51.214 which renders them unenforceable under the CAA. Section 51.214 mandates that a SIP contain "legally enforceable procedures to—(1) Require stationary sources subject to emission standards as part of an applicable plan to install, calibrate, maintain, and operate equipment for continuously monitoring and recording emissions." At a "minimum" a SIP requires COMS for certain source categories listed in C.F.R. § 51 App.P. If a state seeks to impose COMS requirements on all sources within a source category it must follow the proce-

dures set forth in § 51.214. However, when as here, the issue is whether a state can impose federally enforceable COMS requirements on an individual source I must read the various provisions of the CAA and the implementing regulations in *pari materia.*

Section § 7410(a)(2)(F) of the CAA and § 51.230(e) and (f) of the regulations require states to impose monitoring requirements on owners and operators of stationary sources. Section 7414 grants broad authority to the Administrator and, upon proper delegation, to the state to impose monitoring and reporting requirements on any individual operator of any emission source. Moreover, § 51.214 applies to legally enforceable COMS requirements contained in "the plan." These procedures must be followed where a state seeks to impose COMS requirements on all sources within a source category. Here, the COMS requirement is contained in the permit. Condition 3 of the permit specifies the requirements imposed on LPC pursuant to authority granted to the CDH under the section II.B of the Common Provisions which is part of the Colorado SIP. Read together, the CAA and its implementing regulations authorize the CDH to impose COMS requirements on any individual operator of an emission source such as LPC.

■ Defendants next argue that pursuant to C.R.S. § 25–7–105(8) (1981) the COMS requirements are more stringent than federal law and, therefore, enforceable only under state law. As stated previously, the CAA and its implementing regulations require that every SIP require every source to install, maintain, and use monitoring devices and to make periodic reports to the State on the nature and amounts of emissions from such stationary sources. 42 U.S.C. § 7410(a)(2)(F), 40 C.F.R. § 51.230(e) & (f). Thus, the '88 permit COMS monitoring and reports were required by federal law. The choice of a COMS as opposed to other monitoring equipment does not make the requirement more stringent than federal law. Furthermore, § 7414 of the CAA provides that the Administrator retains authority to carry out the requirements of that section even when such authority is delegated to the state. To the extent that C.R.S. § 25–7–105(8) may

be inconsistent with federal law, the federal law controls here. Thus, C.R.S. § 25–7–105(8) is not applicable to the COMS requirement.

I hold that the COMS monitoring and reporting requirements were included in the '88 permit pursuant to authority delegated by the Administrator to Colorado in its SIP and are federally enforceable. Accordingly, counts 1 through 27 charge federal crimes.

■ Defendants next argue that even if the '88 permit COMS requirements were federally-enforceable, under the 1990 agreement the COMS monitoring and reporting requirements were dropped. The defendants, however, point to no provision of the 1990 agreement which specifically negates or otherwise nullifies the COMS requirements. Rather, defendants assert that paragraph 5 of the 1990 agreement which required LPC to hire an independent observer to conduct Method 9 observations on a weekly basis replaced the COMS requirements.

Paragraph 5 of the 1990 agreement provides:

During the term of this Agreement, LP shall be assessed a penalty of $1,000 for each violation of Regulation No. 1, Section II.A.1, based upon observations by either the independent contractor or the Division with respect to emissions from the wafer dryer at the Olathe plant, in lieu of noncompliance penalties and any action for civil penalties pursuant to section 25–7–122, 11A C.R.S. (1989). No more than one such penalty shall be assessed during a single day. During the term of this Agreement, the provisions of this paragraph 5 and paragraph 8 shall constitute the sole means by which the Division may *enforce* wafer dryer opacity violations at the Olathe plant. (emphasis added).

Defendants contend that under the holding of *U.S. v. Solar Turbines, Inc.,* 732 F.Supp. 535 (M.D.Pa.1989), LPC was entitled to rely on what the permits and 1990 agreement objectively said. They argue that because Method 9 was the only method of *enforcement,* it was also the only means required to *monitor* the facility under the 1990 agreement.

Contrary to the defendants assertions, the 1990 agreement did not alter the terms of the '88 permit. Rather, the 1990 agreement imposed additional conditions on LPC based on its prior violations of the opacity limitation. Although the COMS reports could not be used to *enforce* violations during the term of the 1990 agreement, consistent with the federal-state statutory and regulatory scheme they were necessary to *monitor* the effectiveness of the EFB, as well as compliance with the opacity limitation. The COMS reports could then serve as a basis for the CDH to conduct additional Method 9 observations at the facility. Moreover, defendants' argument would lead to the unwarranted conclusion that during the term of the 1990 agreement LPC had no duty to monitor emissions at the Montrose mill. This is contrary to the CAA and the '88 permit.

■ Counts 28 through 31 of the indictment charge the defendants with knowingly making false statements and representations regarding the consumption of phenolic formaldehyde resin (resin) in reports required to be filed with the CDH pursuant to the CAA. Defendants assert that the resin reporting requirements are not part of the SIP and, therefore, are not federally enforceable. I agree.

In contrast to the COMS requirements, the resin reporting requirements were never made a part of the '88 permit. Resin consumption at the Montrose mill was limited by the 1990 agreement to two percent of the final board weight. Defendant's Brief, Exh. B, ¶ 15. However, the 1990 agreement did not require LPC to report resin consumption. At the hearing it became clear that this "requirement" rests on an oral communication between CDH and LPC. This is not the stuff upon which the CAA crimes charged in the resin counts can rest because in order to be federally-enforceable, the resin reporting requirements must be required by the SIP or incorporated into an operating permit issued pursuant to an EPA approved permitting program. Neither of these conditions applies to the resin reporting requirements. Thus, counts 28 through 31 of the indictment must be dismissed as failing to charge federal crimes.

B. Vagueness.

■ Defendants contend that counts 1 through 31 of the indictment must be dismissed because the permits are unconstitutionally vague in violation of due process. Defendants argue that when considered together, the '88 permit, 1990 agreement, and '92 permit create uncertainty regarding whether COMS requirements existed after February of 1990. Consequently, they argue the '88 permit cannot be enforced because it fails to provide them fair warning and invites arbitrary and discriminatory enforcement by failing to provide guidance to law enforcement officials, judges and juries. I need not address this argument as applied to the resin counts because those counts charge no cognizable federal crime.

■ As stated by the Supreme Court in *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), "[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." An enactment is void for vagueness when it is impermissibly vague in all its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The degree of vagueness tolerated by the Constitution depends on the nature of the enactment. *Id.* at 498, 102 S.Ct. at 1193.

The defendants do not contend that § 7413(c)(2) is vague. Rather, they argue that the '88 permit which imposed the reporting requirements considered in light of the 1990 agreement and the '92 permit fails properly to warn them of the conduct giving rise to these criminal charges. I disagree.

The '88 permit clearly states that LPC was required to install, maintain, and operate a COMS at the Montrose mill and file quarterly COMS reports with the CDH. A person of ordinary intelligence subject to the provisions of the '88 permit would have fair warning of the required conduct. *See Flipside,*

455 U.S. at 498, 102 S.Ct. at 1193. The 1990 agreement did not amend or modify the provisions of the '88 permit. Instead, it imposed additional requirements on LPC to remedy prior CAA violations and in aid of CDH's enforcement role under the CAA. Accordingly, the defendants had adequate notice of the COMS monitoring and reporting requirements. Consequently, I deny the motion to dismiss on vagueness grounds.

## C. Materiality.

■ Defendants further assert that only material acts and omissions—meaning those that "will have a tendency to influence action or inaction by the EPA"—may be prosecuted under the CAA, 42 U.S.C. § 7413(c)(2). S.Rep. No. 101–228, 101st Cong., 2d Sess. 363 (1989). Defendants proffer evidence of internal CDH memorandums which question the accuracy of the COMS readings in support of their contention that the opacity reports did not influence EPA action or inaction and, therefore, were not material. The Government disputes the interpretation given to these documents by the defendants. Whether a statement is material is an element of the crime under § 7413(c)(2)(A). "[T]he materiality inquiry," involving as it does "delicate assessments of the inferences a 'reasonable [decisionmaker]' would draw from a given set of facts and the significance of the inferences to him ... [is] peculiarly on[e] for the trier of fact." *See U.S. v. Gaudin*, —— U.S. ——, —— – ——, 115 S.Ct. 2310, 2314–15, 132 L.Ed.2d 444 (1995) (quoting *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976)). Accordingly, the question of materiality is one for the jury.

## D. Counts 20, 21, and 25 through 27.

■ Defendants move to dismiss counts 20, 21, and 25 through 27 because the alleged conduct constituting these violations occurred after the issuance of the '92 permit which canceled the COMS requirements. The government concedes that counts 21 and 27 should be dismissed.

Section 7413(c)(2)(A) makes it unlawful for any person to make a false material statement in any document required under the CAA "to be filed or maintained." Counts 25 and 26 of the indictment charge the defendants only with knowingly making false material statements in a "report required to be *filed* with the Colorado Department of Health under the Clean Air Act...." Indictment, ¶¶ 24, 26 (emphasis added). These reports were filed on January 28, 1992 and April 30, 1992 after the issuance of the '92 permit canceling the COMS requirements. Thus, at the time these reports were *filed* they were no longer required under the CAA. I cannot read the word "maintained" into counts 25 and 26 for to do so would be to impermissibly amend these counts. Consequently, they will be dismissed.

■ Count 20 of the indictment, however, charges the defendants with tampering with a monitoring device and method "required to be *maintained* under the Clean Air Act ... on January 20 through the 21st." Indictment ¶ 16 (emphasis added). The '92 permit was issued on January 21, 1992. Consequently, on January 20, 1992 LPC was still required to *maintain* the COMS. Thus, this count is properly charged as to the 20th. The viability of the charge as to the 21st depends on the effective time of the '92 permit. This is a jury question. Accordingly, the motion to dismiss count 20 is denied.

## E. The 1990 Amendments to the CAA.

■ Before the 1990 amendments to the CAA, violations of § 7413(c)(2) were misdemeanors punishable by imprisonment of up to six months. In 1990, Congress increased the penalty for violating this section to a felony punishable by up to two years in prison. These amendments also required the implementation of a new permitting scheme which requires a permit to contain the requirements of the applicable implementation plan. 42 U.S.C. § 7661a et. seq. Defendants argue that applying the post 1990 punishments to violations occurring before the implementation of the new permitting scheme would thwart the purpose of the CAA. Defendants further argue that the new permitting scheme is designed to give potential violators fair notice of the SIP requirements applicable to the source. Without this fair notice, the more onerous crimi-

nal penalties should not be imposed. I disagree.

The 1990 amendments implementing the new permitting scheme are designed to accomplish what CDH accomplished in the '88 permit. The 1990 amendments require implementing agencies to incorporate SIP requirements, including monitoring and reporting, applicable to a source in its permit. Here, the '88 permit clearly set forth the monitoring and reporting requirements to which LPC was subject. The '88 permit gave the defendants fair warning. Consequently, I conclude that, as a matter of law, the defendants are properly charged with felonies under the CAA.

## III.

Count 1 of the indictment charges the defendants with conspiracy to make false statements and tampering with monitoring equipment in violation of the Clean Air Act and title 18 U.S.C. § 1001. The defendants move to strike portions of paragraphs 14(a)(1), (7), (8) and (9), 14(d), and 14(e) of the indictment containing allegations of overt acts which post-date the '92 permit. They also move to strike paragraph 14(c) concerning resin reporting requirements and 14(g) concerning production reporting requirements. They argue that because there was no duty to make these reports these allegations cannot be overt acts in furtherance of the conspiracy. Although the alleged overt acts may not constitute acts in furtherance of a conspiracy to violate § 7413 of the CAA they may as to the further charged object of the conspiracy—violation of 18 U.S.C. § 1001.

Section 1001 provides:
Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five year, or both.

The government argues that the clause "within the jurisdiction of any department or agency of the United States" has been defined very broadly to include any state agency which uses federal funds. *U.S. v. Wright*, 988 F.2d 1036, 1039 (10th Cir.1993). Here, defendants do not dispute that the CDH receives federal funding to operate its air quality program. However, after argument on the motion defendants submitted a supplemental brief on the question whether federal funding alone is sufficient as a matter of law to satisfy the "jurisdiction" clause of § 1001. Their argument is focused only on paragraph 14(c) but may affect ruling on their motion to strike generally. I will hold the motion to strike in abeyance pending further briefing.

## IV.

Defendants Dulohery and LPC move to sever the CAA counts of the indictment, from the APA counts. Dulohery and LPC argue that under Fed.R.Crim.P. 8(a) the CAA counts and the APA counts have been improperly joined or, alternatively, that joiner is improper under Fed.R.Crim.P. 14. I agree.

Rule 8(a) permits two offenses to be joined where they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The CAA counts allege conspiracy to falsify monitoring reports and tamper with the COMS to achieve falsely low opacity readings on the strip charts which were submitted to CDH together with separately charged crimes in violation of the CAA. The APA counts allege a scheme to defraud LPC's customers by inducing those customers to purchase OSB products through false and fraudulent statements and omissions. The government alleges that the common motive was to increase production and, thus, profit. Moreover, the government argues that counts 28 through 31, the resin counts, bind the two schemes together.

The purpose of the CAA is to protect and enhance the quality of the nation's air. The

CAA counts now remaining in this prosecution seek criminal sanctions for alleged conduct committed contrary to the CAA's overriding purpose. The focus of the inquiry in these counts is on defendants duty to monitor emissions and provide COMS reports to the CDH. The acts constituting these offenses concern the COMS equipment and COMS reports. In contrast, the purpose of the mail fraud statute is to protect the public from being defrauded through scheme or artifice. The APA counts allege a complicated scheme by which LPC and Dulohery manipulated quality assurance testing and auditing standards in order to comply with the requirements of the APA trademark. These acts were directed at LPC's sales and marketing efforts. According to the government, the purpose of the alleged scheme was to defraud customers of LPC. On the other hand, the purpose of the CAA conspiracy and its underlying counts was to defraud the CDH. The CAA and APA counts are distinct. Moreover, to the extent the government purports that the resin counts glue the two cases together, the dismissal of those counts further supports severance. The indictment fails to allege a common objective sufficient to support joinder of the offenses. *See U.S. v. Nicely*, 922 F.2d 850, 854–55 (D.C.Cir.1991). Consequently, the CAA counts and APA counts are improperly joined and must be severed.

 Even if severance is not mandated by Rule 8(a), it is appropriate under Rule 14. Rule 14 provides that the court may sever a case where prejudice may result to a defendant by joinder of offenses. Where, as here, the danger is great that the jury would, despite limiting instructions, improperly use evidence pertaining to one set of alleged crimes to infer a criminal disposition on the part of a defendant to commit another set of charged crimes, severance is appropriate. *U.S. v. Dickey*, 736 F.2d 571, 591 (10th Cir. 1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Consideration of fairness requires severance. Furthermore, each set of alleged crimes requires the presentation of complex unrelated technical evidence. *See U.S. v. Pack*, 773 F.2d 261, 267 (10th Cir.1985). Consequently, severance is also appropriate under Rule 14. The resolution of defendants Dulohery and LPC's motion for severance renders moot defendant Mann's motion for severance because the resin counts with which he is charged are dismissed and he is not charged in any of the APA counts.

Accordingly it is ORDERED that:

1) Defendants' motion to dismiss Count 21, Counts 25 through 27 and Counts 28 through 31 is GRANTED;

2) Defendants' motion to dismiss Counts 1 through 20 and Counts 22 through 24 is DENIED;

3) Defendants' motion to sever counts 32 through 56 is GRANTED;

4) Defendants' motion to strike is held in ABEYANCE. The government shall file a brief in response to defendant's supplemental brief in 10 days and defendant's shall have 10 days thereafter to reply; and

5) Defendant Mann's motion to sever is denied as moot.