**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas L. PACK, Defendant-Appellant.**

No. 84–1392.

United States Court of Appeals,
Tenth Circuit.

Sept. 19, 1985.

James Clinton Garland, Tulsa, Okl. (Larry A. Gullekson, Tulsa, Okl., with him on brief), for defendant-appellant.

Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl. (Layne R. Phillips, U.S. Atty., Tulsa, Okl., with him on brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, DOYLE, Circuit Judge, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

Defendant-appellant Thomas L. Pack appeals from a jury verdict convicting him on one count of conspiracy and three substantive counts for violations of the tax laws of the United States. Pack was jointly indicted with co-defendant Neal Todd on one count of conspiracy (Count I). In separate counts, the Grand Jury charged Pack with filing of a false income tax return and willful attempts to evade or defeat payment of income taxes (Counts II, III, IV). The Grand Jury also charged Todd with three counts of felonious failure to file currency transaction reports ("CTRs") (Counts V, VI, VII). Pack and Todd were tried before the same jury. The jury found Pack guilty of having violated three separate federal statutes: (1) 18 U.S.C. Sec. 371,[1] conspiring to defraud and to impede the United States in its collection of income taxes; (2) 26 U.S.C. Sec. 7206(1),[2] willful filing of a false income tax return; (3) 26 U.S.C. Sec. 7201,[3] willful attempts to evade or defeat payment of income taxes. The jury also found Todd guilty of conspiracy and felonious failure to file CTRs with the Internal Revenue Service ("IRS"), as required by 31 U.S.C. Secs. 1081, 1059 (1970), and the regulations promulgated under these provisions.[4] Only Pack is seeking a

---

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas is sitting by designation.

1. Title 18 U.S.C. Sec. 371 states in pertinent part: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. Title 26 U.S.C. Sec. 7206(1) (1954), applicable to the offense charged here, provided: Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than three years or both, together with the costs of prosecution.

3. Title 26 U.S.C. Sec. 7201 (1954), applicable to the offenses charged here, provided: Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

4. The applicable provisions of the Currency and Foreign Transaction Reporting Act were originally codified at 31 U.S.C. Secs. 1051–1083 (1970). These sections have been revised and recodified as Records and Reports on Monetary Instruments Transactions, 31 U.S.C. Secs. 5311–5322 (1982). We will refer to the statutes and regulations as they existed at the time when the alleged offenses occurred.

Title 31 U.S.C. Sec. 1081 (1970) required a financial institution to file a report with the IRS for any monetary transaction involving the transfer of United States currency in an amount to be established by the Secretary of the Treasury. The statutory definition of the term "financial institution" included credit unions. *Id.,* at Sec. 1052(e)(6) (1970). The implementary regulations promulgated by the Secretary of the Treasury under this title required a financial institution to file Currency Transaction Reports (CTRs) for all transactions in currency involving more than $10,000. 31 C.F.R. Sec. 103.22(a) (1972). Such reports shall be filed with the IRS on forms prescribed by the Secretary within 15 days following the day on which the currency transactions took place. 31 C.F.R. Sec. 103.-25(a) (1972). The statutory penalty for a willful violation of this title was imposition of a fine not more than $500,000 or a prison term not

review of the judgment of his convictions in this appeal. Assigning the following allegations of error, Pack claims that he was denied a fair trial. First, he asserts that the district court erred in admitting hearsay evidence relating to the conspiracy under Fed.R.Evid. 801(d)(2)(E). Next, he claims that the court erred in refusing to grant his motion for severance at trial under Rule 14, F.R.Crim.P. Finally, Pack maintains that the court erred in failing to instruct the jury sufficiently on his theory of defense. A careful review of the record reveals that none of these contentions has merit. We affirm.

 It is axiomatic that in reviewing a criminal conviction, we must evaluate the evidence in the light most favorable to the verdict, deferring to the jury's weighing of the evidence and credibility determinations. *United States v. Pilling,* 721 F.2d 286, 288 (10th Cir.1983). We will not recite the defendant Pack's versions of the facts, since the jury obviously did not credit them. Pack was an electrician by trade and a member of the Electrical Workers Federal Credit Union in Tulsa, Oklahoma. Todd was the manager of this credit union until September 1979 when he was terminated from this position. The conduct for which Pack and Todd were indicted occurred between 1978 and 1980. During these years, Pack earned substantial income from his bookmaking ventures in wagering the outcome of the football and basketball games. These wagering activities usually generated large amounts of cash. Pack needed a method for depositing these wager earnings which would frustrate the IRS from ascertaining their sources and assessing taxes due on such revenue.

Pack met Todd in March, 1978 in Tulsa, Oklahoma. At that time, Todd was having numerous financial problems at the credit union. Many of the borrowers from the credit union were in default of their loans.[5] The deposits by union members into the low interest yielding member-share savings accounts did not generate the funds which would sufficiently offset the losses sustained in delinquent loans. In attempting to balance its financial posture, Todd established special "note payable accounts" for those investors with the arrangement that their investments and earnings would not be reported to the IRS for tax assessments. One of these investors was Pack, who opened a "note payable account" at the credit union in March 1979. Todd instructed the employees at the credit union that the transactions in Pack's "note payable account" would be managed in a manner which would circumvent the IRS reporting requirements. Between March 1978 and September 1979, Pack made several large deposits into and withdrawals from this "note payable account." Each of these transactions was over $10,000 in cash. There were no CTRs prepared and submitted to the IRS for each of these transactions.

The Government presented the cash expenditure method of proof to establish that during the tax years of 1977, 1978, and 1979 Pack had earned large amounts of unreported income from his gambling business. He also earned approximately $5,890 in 1977 as commission from his employment at Mid-Region Petroleum, in Tulsa, Oklahoma. He did not declare this earning in his 1977 tax return filed on May 26, 1978. The Government presented evidence and testimony to show that Pack attempted to prevent the IRS from discovering his actual income in 1978 and 1979 by placing the ownership titles for major items he purchased for himself in the names of several nominees. During these years, Pack purchased two cars, a boat, and various expensive home entertainment equipment.

more than five years, or both, if the violation was committed (1) in furtherance of the commission of any other violation of Federal law, or (2) as part of a pattern of illegal activity involving transactions exceeding $100,000 in any twelve-month period. 31 U.S.C. Sec. 1059 (1970).

5. A 1979 audit examination by the National Credit Union Administration showed that the credit union had recorded in 1978 $1.7 million as loan loss. ROA Vol. IV at pages 574–578.

Most of which were paid in cash. Although Pack had an annual income in excess of $73,000 for each of these two years, Pack did not file either a 1978 or 1979 tax return.

Pack's first claim of error is two-fold: First, that the district court impermissibly departed from the "preferred order of proof" by refusing to hold a separate *Andrews-Petersen* hearing in determining the admissibility of co-conspirator's hearsay statements; and second, that the district court erred by admitting hearsay statements of an alleged co-conspirator without sufficient independent evidence of the existence of a conspiracy. Pack contends that the Government failed to prove by the preponderance of the evidence, independent of the hearsay statements by Todd to his employees, he and Todd were participants of an agreement to defraud the United States and they acted in pursuit of that illegal objective by impairing or impeding the IRS in its tax collection functions.

■ Hearsay statements made by one member of a conspiracy is admissible evidence against co-conspirators under certain circumstances. *See* Fed.R.Evid. 801(d)(2)(E). In *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980), we elucidated on the procedures announced in *United States v. Andrews,* 585 F.2d 961 (10th Cir.1978), in admitting statement made by one member of a conspiracy against other members of a conspiracy. First, the trial judge must determine whether or not there is substantial, independent evidence of a conspiracy. Second, the trial judge must decide as a factual matter whether or not the prosecution has shown by a preponderance of the evidence independent of the hearsay statement (1) that a conspiracy existed, (2) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. *United States v. Petersen, supra,* 611 F.2d at 1313. We suggested that,

whenever possible, it is preferable for the prosecution to first introduce its independent proof of the conspiracy and the defendant's connection with it before admitting the incriminating hearsay declarations of the co-conspirators. *Id.,* at 1310.

The record reveals that the district court was thoroughly familiar with the *Andrews-Petersen* preferred order of proof procedures. Although the district court allowed the Government to proceed with its proof of the alleged conspiracy in the early phase of the Government's case-in-chief, the court was very careful in requiring the Government to solicit only non-hearsay testimony and evidence supportive of the alleged conspiracy and the involvements of each of the defendants in it. In making its offer of proof, the Government established by independent evidence and testimony that: (1) Pack opened a "notes payable account" at the credit union for the purpose of managing the cash earnings obtained from his wagering activities; (2) Todd, who was manager of the credit union, assisted Pack with the opening of his "notes payable account" and also in verifying each of the currency transactions in Pack's account—all of which was in excess of $10,000; (3) Todd knew of the requirements for filing currency transaction report for cash transaction over $10,000, but did not submit any of such reports to the IRS for each of the currency transactions in Pack's account; (4) Todd directed his employees to keep the records of transactions for the "notes payable accounts" in a special notes payable accounts ledger book instead of handling them in a manner consistent with the reporting procedures for transactions in the member-share savings accounts; (5) Pack withdrew from his "notes payable account" all of his deposits and closed out this account immediately following the dismissal of Todd from his manager position at the credit union in September 1979.

■ Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose or agreement to accomplish an unlawful objective may be inferred from a "development and a collocation of

circumstances." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). Even a single overt act by the defendant can be sufficient to connect him to the conspiracy if that act leads to a reasonable inference of intent to participate in an unlawful agreement or criminal enterprise. *United States v. Pilling, supra,* 721 F.2d at 292–293. In this case, there was substantial non-hearsay independent evidence to establish the existence of a conspiracy with the dual complimentary objectives to impair or impede the IRS in its function of identifying Pack's income and collecting taxes due and owing on such income. The credit union needed additional capital assets to counterbalance its losses in delinquent loans. To attract these investments, Todd established the "notes payable accounts." The bookkeeping procedures were arranged in such manner so as to serve Pack's purpose in hiding the true sources of his wagering income from the IRS during the years in question. We find there was substantial independent evidence that a conspiracy to defraud the United States existed, that Pack was one of the participating members of that conspiracy, and that the district court properly admitted the hearsay declarations by Todd which incriminated him and Pack for their involvements in conspiring to obstruct the tax collection functions of the IRS under Fed.R.Evid. 801(d)(2)(E) after the court found the Government had met its burden of proof under the *Andrews-Petersen* standards.

The last two assignments of error which Pack has asserted on appeal have even less merit and do not require extended discussions. Before and during the trial, Pack moved for a separate trial under Rule 14, F.R.Crim.P.,[6] claiming he was misjoined in the Indictment under Rule 8(b), F.R. Crim.P.[7] These motions were denied. Pack now contends that the failure to grant his motions for severance at trial was a reversible error. Without alleging any specific facts to support this contention, Pack merely asserts that he was prejudiced by the spillover effects from the evidence introduced against co-defendant Todd.

Multiple defendants may be charged jointly in the same indictment upon the allegations that the defendants engaged in the same acts or series of transactions which constitute the offense of conspiracy. Rule 8(b), F.R.Crim.P.; *United States v. Petersen, supra,* 611 F.2d at 1331. The general rule in conspiracy cases is that persons indicted together should be tried together. *United States v. Beathune,* 527 F.2d 696 (10th Cir.1975), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976). The trial court may, in its discretion, grant a severance of defendant from the action if prejudice to that defendant resulted from such joinder. Rule 14, F.R.Crim.P.; *United States v. Bridwell,* 583 F.2d 1135, 1142 (10th Cir. 1978). In determining the merits of a motion for severance, the trial court must balance two competing interests by weighing the prejudice to a particular defendant caused by the joinder against the considerations of economy and expedition in judicial administration. *United States v. Walton,* 552 F.2d 1354 (10th Cir.1977), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). The trial court's decision on the motion for severance will not be disturbed

---

**6.** Rule 14, F.R.Crim.P., provides that: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defend-ants which the government intends to introduce in evidence at the trial."

**7.** Rule 8(b), F.R.Crim.P., provides that: "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

on appeal in the absence of abuse of discretion. *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir.1980), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981). To establish an abuse of discretion, the defendant must factually demonstrate that the denial of severance deprives his right to a fair trial, *United States v. Butler,* 494 F.2d 1246, 1256 (10th Cir.1974), not merely that a separate trial might have offered him a better chance of acquittal. *United States v. Edwards,* 488 F.2d 1154, 1160 (5th Cir.1974).

▪ We have reviewed the entire trial record. We conclude that the district court did not abuse its discretion in trying the defendants jointly. Although there were over two hundred exhibits admitted into evidence, the trial was neither unusually lengthy nor complex and the jury could compartmentalize the evidence as to each of the defendants and properly apply it to the court's instructions. There were numerous bench conferences requested by counsel for the defendants at trial, where the trial judge required the Government to excise some arguably prejudicial pieces of evidence which would be admissible to one defendant but not the other. The evidence against Pack for his involvement in the conspiracy to defraud the United States was only one part of the overall proof of this illegal scheme. There was additional independent evidence which was limited to and focused at the charges against Pack for false declaration on tax return and willful tax evasions. Even if Pack was tried separately, Todd's incriminating hearsay statements would have been admissible in the trial against Pack under Rule 801(d)(2)(E), Fed.R.Evid., in connection with the proof of the alleged conspiracy. Pack has not shown, and we do not find, any factual basis to support a finding that his right to a fair trial was prejudiced by having been jointly charged and tried with co-conspirator Todd.

The final claim raised by Pack is that the district court committed reversible error when it refused to adopt his version of the proposed jury instruction on his defense to the charges of having violated the federal tax statutes. The Government established that Pack received substantial taxable compensations and commissions from his brokerage business in oil and gas sales during the years in question, and he made no reports to the IRS on these taxable earnings. His requested jury instruction on his theory of defense was that some of the money he received during these years were loans, rather than employment compensations, from his friends which need not be reported for tax assessments.

▪ When reviewing a claim of error relating to jury instructions, the instructions must be evaluated as a whole. *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400–401, 38 L.Ed.2d 368, 373 (1973). The adequacy of the entire charge must be determined in the context of the whole trial. *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 451–452 (10th Cir.1984). Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented. *United States v. Nolan,* 551 F.2d 266, 274–275 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). There is no requirement that a trial judge must follow the exact language from the jury instructions offered by the defendant. *Id.*

▪ The district court instructed the jury that not all money and property, including the proceeds of loans, received by a taxpayer was subject to income tax assessments under our tax laws; that Pack contended that certain funds claimed by the Government as taxable income were proceeds of loans he borrowed from his friends; and that if the jury found any "funds received by Thomas Pack were loans, (they) are instructed that the defendant was not required, and was under no duty to report in his income tax returns any funds so received as loans to him, nor to pay any tax upon said loans." ROA Vol.

I, at 146–148. We conclude that the jury was properly charged with the instruction on the defendant's theory of defense, and that the instructions were comprehensive and sufficient for the jury to return the guilty verdict on the charges beyond a reasonable doubt.

Finding no reversible error in the trial of the case, the judgment is AFFIRMED.