St. John TYLER, Petitioner,

v.

Michael NELSON, et al., Respondents.

No. 94–3246–DES.

United States District Court,
D. Kansas.

Sept. 30, 1997.

**1436**

St. John Tyler, El Dorado, KS, pro se.

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for Respondents.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated following his guilty plea to a charge of conspiracy to sell cocaine and convictions by a jury of sale of cocaine, second-degree murder, aggravated assault of a law enforcement officer, possession of heroin with intent to sell, possession of cocaine with intent to sell, and perjury.

In this habeas corpus action, petitioner contends the trial court erred in refusing to instruct the jury on self-defense and alleges that he was denied a fair trial by the trial court's refusal to remove from the Sedgwick County Courthouse a plaque honoring the law enforcement officer killed by petitioner and by the trial court's refusal to poll the jury concerning a television broadcast prior to the jury's deliberations.

### Factual Background

The facts underlying petitioner's conviction are set out in detail in the decision of the Kansas Supreme Court, *State of Kansas v. Tyler,* 840 P.2d 413, 251 Kan. 616 (Kan.1992), and only those facts necessary to the court's consideration of the three issues raised for habeas corpus review are included in this order.

On February 2, 1988, following a controlled buy of cocaine at a residence in Wichita, Kansas, Sedgwick County Sheriff's officers obtained a search warrant for the residence. Before executing the warrant in the late evening of February 2, the Sheriff's Department and Wichita Police Department officers involved were briefed on the information available about the occupants of the house and its layout. A team of eight officers was to enter the house with four officers remaining outside the residence. The first officer, James McNutt wore his sheriff's uniform and was assigned to open the screen door and secure the living room; five officers, Detectives Woods, McNett, Parham, and Gallegos, and Detective Sergeant Bardezbain each wore a blue jacket with a cloth sheriff's badge on the front and large yellow letters on the back reading "SHERIFF'S NARCOTICS" and a blue ballcap with a cloth sheriff's badge on the front. The remaining two entering officers were in Wichita Police Department uniforms.

As the raid team approached and entered the house, the living room was dark. The officers shouted "sheriff's office," "search warrant" and the like, but according to trial testimony, not all occupants of the house heard and understood these statements. There was testimony of a rumor that the house would be robbed and some occupants testified they initially thought the intruders were robbers.

Shortly after officers entered the residence, Detective Terry McNett was shot and killed by the petitioner in the kitchen of the residence. The kitchen was lighted and McNett was shot in the face at close range.

Petitioner also fired at least one shot toward Detective Sergeant Bardezbain and then sought cover behind the refrigerator after being wounded in both legs, apparently by shots fired by Detective Parham. Petitioner was taken into custody without further incident, and he and others found in the residence were arrested. A second search warrant was issued and executed at the residence early on February 3, 1988, and resulted in the recovery of drugs, drug paraphernalia, weapons, and other evidence.

At trial, the prosecution presented evidence that petitioner and Sonya Wheeler, who worked at the residence selling drugs for the petitioner, were in the living room when the raiding officers entered the residence. Wheeler testified that she and petitioner ran into the kitchen and that she was present when petitioner shot Detective McNett. Wheeler also testified that she knew the people entering the residence were law enforcement officers, and she testified that on or about January 16, 1988, petitioner told her that if officers attempted to take him into custody, "he would take someone out." (R., Trial Transcript, pp. 417–18.)

Petitioner testified at trial that he and Wheeler were in the kitchen when the raid party entered the house and that he did not realize the intruders were law enforcement officers. He stated that he shot Detective McNett under the mistaken impression that he was a robber who was going to kill him.

The trial court refused petitioner's request to instruct the jury on self-defense but instructed the jury on first degree murder, second degree murder, and voluntary manslaughter. In addition, the jury instructions stated, in part, "[a] person is not authorized to use force to resist, obstruct or oppose the execution or attempted execution of a search warrant or the making or attempted making of an arrest which said person knows is being made by a law enforcement officer." (R., Jury Instr. 19.) The jury returned a verdict of guilt on all charges except one charge of

aggravated assault on Detective Parham. The trial court sentenced petitioner under the Habitual Criminal Act to a controlling term of 111 to 330 years. The Kansas Supreme Court affirmed petitioner's conviction on direct appeal, and this habeas corpus action followed.[1]

### Discussion

### Failure to give jury instruction

█ Petitioner first alleges the trial court erred in refusing to instruct the jury on self-defense. The Kansas Supreme Court affirmed the decision of the trial court, finding that petitioner had not satisfied the two-prong test to merit an instruction on self-defense required by state law. *Kansas v. Tyler,* 840 P.2d at 422. The first prong is subjective and requires a showing the defendant sincerely believed it was necessary to kill in self-defense. The second is objective and requires a showing that a reasonable person in the same circumstances would have believed self-defense was necessary. *Id.,* citing *State v. Stewart,* 243 Kan. 639, 763 P.2d 572 (1988).

█ It is settled that a habeas corpus petitioner bears a heavy burden in seeking relief from a state court conviction upon alleged error in instructing the jury. *Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir.1995) (citing *Lujan v. Tansy,* 2 F.3d 1031, 1035 (10th Cir.1993), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1074, 127 L.Ed.2d 392 (1994)). A state conviction may be overturned on this basis only when error rendered the trial so fundamentally unfair that the petitioner was denied a fair trial. *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir.), *cert. denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 402 (1990).

█ "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack ... is even greater that the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97

---

1. The court notes this petition was filed prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Supreme Court has recently held that the provisions of Chapter 153 of Title 28 of the United States Code do not apply to noncapital cases pending on the effective date of the AEDPA. *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997).

**1438**

S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977). In·examining the failure to give a requested instruction, the court must consider that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 97 S.Ct. at 1737.

■ Finally, it is settled in this circuit that "a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented," *United States v. Haar,* 931 F.2d 1368, 1371 (10th Cir.1991) (quoting *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985)) and that a "defendant will not be entitled to an instruction which lacks 'a reasonable legal and factual basis.'" *Haar, id.,* (quoting *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990)). The court therefore must consider whether the evidence adduced at trial reasonably supported petitioner's request for a jury instruction on self-defense.

As noted, the testimony at trial established that only some of those present in the house heard members of the raid team announce their status as law enforcement officers upon their entry, while others inferred their status from their race, their orders to get down, and the like. Also before the trial court was testimony that petitioner·did not know the members of the raid team were law enforcement officers and that there were rumors the house would be robbed. However, the evidence also showed that Detective McNett was dressed in clothing which clearly identified him as a deputy sheriff, that the kitchen was lighted when he was shot there, and that petitioner shot McNett in the face at close range. There had been testimony quoting petitioner's professed intent to "take someone out" if the police attempted to take him into custody, and the petitioner testified he knew that authorities might conduct a raid on his establishment.

Examining these circumstances in light of the heavy burden borne by a petitioner,.this court finds no error in the refusal to instruct the jury on self-defense. The court agrees, given the evidence presented at trial, with the conclusion of the Kansas Supreme Court that no reasonable person would believe it necessary to kill McNett for self-defense, and concludes the trial court's refusal to instruct on self-defense did not render petitioner's trial fundamentally unfair.

**Failure to remove plaque**

■ Petitioner next contends the trial court erred in failing to direct removal of a plaque honoring Detective McNett from the courthouse during the petitioner's trial. The plaque, which hangs in the first floor lobby of the Sedgwick County Courthouse, is bronze, measures sixteen by eighteen inches, and reads: "IN MEMORY OF DETECTIVE TERRY MCNETT who was killed in the line of duty on February 3, 1988 while participating in a criminal investigation which involved the execution of a search warrant for illegal narcotics and dangerous drugs."

The trial court denied a pretrial motion to remove or cover the plaque during trial finding the integrity of the proceedings would be adequately protected by the jury's oath to conscientiously try the case and return a verdict based solely upon the evidence admitted at trial. The Kansas Supreme Court affirmed this decision, finding the defendant had not sustained the burden of showing prejudice from the failure to conceal the plaque.

The Supreme Court has instructed that when some aspect of trial surroundings is alleged to deny due process:

"All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn,* 475 U.S. 560, 572, 106 S.Ct. 1340, 1347–48, 89 L.Ed.2d 525 (1986).

Examining the circumstances here in light of this standard, the court finds no denial of due process. The court does not find the plaque was "inherently prejudicial", as neither the wording nor location of the plaque

requires the conclusions advanced by the petitioner, namely, that the plaque naturally evoked the response that the person who shot Detective McNett was a criminal dealing dangerous drugs, or that his assailant was acting unlawfully. Rather, the wording on the plaque indicates only that McNett was killed, and the plaque hangs in the courthouse lobby, and therefore was not in constant view during the proceedings or the jury's deliberations. Likewise, there has been no showing of an actual prejudicial effect on any juror. The court finds no merit to the claim of prejudice.

**Failure to poll jurors**

 Petitioner contends the trial court erred in refusing to poll jurors prior to jury deliberations concerning whether they saw an allegedly prejudicial television broadcast concerning the case aired shortly before deliberations were to begin. The trial court denied the motion finding it had adequately protected the proceedings by its admonitions to the jury throughout the proceedings to refrain from reading or listening to any media account of the trial. On appeal, the Kansas Supreme Court denied relief on the ground that petitioner failed to show that the televised broadcast had any impact on the jury's decision.

While a state court conviction may be overturned by a federal court due to jurors' exposure to adverse publicity, such a result must rest upon a finding that the trial proceedings have been wholly contaminated by media coverage or that the defendant has shown actual prejudice. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

In this case, the televised broadcast apparently aired on one station immediately before jury deliberations began. There has been no showing that any juror saw the broadcast, and the record reflects repeated admonitions by the trial court to the jurors against any outside influences. The record before the court simply does not support the contention that the proceedings were contaminated by the broadcast, and this court finds no merit to petitioner's claim he was denied due process.

**Conclusion**

Having considered petitioner's claims for relief, the court concludes there is no basis to disturb the decisions of the state courts. The court is persuaded the jury was adequately instructed and that the trial court's decisions concerning the plaque in memory of Detective McNett and the defense motion to poll the jury were reasonable.

IT IS THEREFORE ORDERED the petition for habeas corpus is denied.

**IT IS SO ORDERED.**