**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAFAEL QUINTERO RIVAS, also
known as Rafael Rivas, also known as
Rafael Quintero, also known as Guero,

Defendant - Appellant.

No. 12-6159

(D.C. No. 5:11-CR-00234-HE-1)

W.D. Oklahoma

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **MURPHY**, and **MATHESON**, Circuit Judges.

## I. INTRODUCTION

A jury convicted Rafael Quintero-Rivas on multiple counts of violating

federal drug laws.[1]  After the district court submitted the case to the jury,

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[1]The jury found Quintero-Rivas guilty of conspiracy to possess with intent
to distribute methamphetamine, in violation of 21 U.S.C. § 846; three counts of
distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); one count
of possession with intent to distribute methamphetamine, in violation of 21 U.S.C.
(continued...)

Quintero-Rivas moved for a mistrial, asserting counsel for a co-defendant "call[ed] him a drug dealer" during closing arguments, "much to [his] prejudice." The district court denied the motion. On appeal, Quintero-Rivas asserts the district court erred in denying his motion for a mistrial and in failing to *sua sponte* reconsider a previously denied motion to sever. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

In 2010, the Drug Enforcement Administration ("DEA") contacted Immigration and Customs Enforcement Homeland Security Investigations ("HSI") for assistance with an investigation of methamphetamine distribution in Oklahoma City. As an outgrowth of this collaboration, HSI started investigating Quintero-Rivas.[2] HSI employed traditional physical surveillance, wiretap TT3, a pen register, and a pole camera that overlooked Quintero-Rivas's apartment complex. This investigation established copious evidence Quintero-Rivas both

---

[1](...continued)
§ 841(a)(1); and seven counts of use of a communication facility to facilitate the distribution of methamphetamine, in violation of 21 U.S.C. § 843(b).

[2]HSI Special Agent Austin Shaver testified the DEA sought HSI's assistance because the large size of the criminal enterprise under investigation required extensive surveillance. Ultimately, when the original wiretap ("TT1") identified an independent avenue for investigation centered around Quintero-Rivas, the matter was "spun off" to HSI. HSI then obtained a separate wiretap ("TT3") of a phone utilized by Quintero-Rivas to facilitate the distribution of methamphetamine. The evidence adduced at the trial in this case flowed from the investigation surrounding wiretap TT3.

distributed methamphetamine to other dealers and facilitated drug deals between other distributors.

Based on evidence obtained from this investigation, a grand jury returned a multi-count indictment charging Quintero-Rivas and others[3] with various drug offenses. Campos filed a pre-trial motion for severance; Quintero-Rivas joined the motion.[4] The motion principally asserted a joint trial would be unfair because most of the evidence pertained solely to Campos's co-defendants, whose alleged culpability far exceeded his own asserted wrongdoing.[5] The district court denied

---

[3]The indictment also set out charges against Valente Campos, Jesus Figueroa-Labrada, Irving Lechuga-Garcia, Eloy Villa, Jose Gonzalez-Gondarilla, and Ivan Guzman-Torres.

[4]Quintero-Rivas asserts the district court erred, late in the trial, when it failed to *sua sponte* reconsider its pre-trial denial of this motion. He did not, however, include in the record a copy of the severance motion or the government's response thereto. *But cf.* 10th Cir. R. 10.3(D)(2) (providing that when an appeal is from an order disposing of a motion, the motion and any response thereto must be included in the record). Although under no obligation to do so, this court has accessed the relevant materials through the district court's electronic docket. Nevertheless, we do not recommend relying on this discretionary procedure. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 908-10 (10th Cir. 2009) (refusing to hear claims of error predicated on materials not included in the record).

[5]Given this rationale, Quintero-Rivas's joinder in the motion is puzzling. As reflected in the indictment, Quintero-Rivas was the central player in the alleged conspiracy. Quintero-Rivas was named in twelve of the twenty counts, while Campos was named in only three of the twenty counts. Furthermore, all twenty counts, including those that did not name him, revolved around Quintero-Rivas. It is simply not possible the type of spillover identified in the motion could have impacted Quintero-Rivas. His joinder might be explained by the fact the motion also argued severance would be appropriate if, after a *James* hearing,

(continued...)

-3-

the motion, concluding the trial would be neither unusually lengthy nor so complex a jury would be unable to segregate the evidence as to each defendant. *See United States v. Pack*, 773 F.2d 261, 267 (10th Cir. 1985) (concluding trial court did not abuse its discretion in denying severance motion when "the trial was neither unusually lengthy nor complex and the jury could compartmentalize the evidence as to each of the defendants and properly apply it to the court's instructions").

Eventually, Quintero-Rivas, Campos, Gonzalez-Gondarilla, and Figueroa-Labrada proceeded to trial. During its opening statement, the government told the jury the evidence would demonstrate each of the four defendants, "[a]lthough varying in degrees," played a necessary role in the drug conspiracy set out in the first count of the indictment. Nevertheless, the government stated the evidence would show "there was one common factor in each and every transaction, and that person who was at the center of this

_____

[5](...continued)
the district court concluded certain statements were only admissible against some defendants. *See United States v. James*, 590 F.2d 575, 580-83 (5th Cir. 1979) (holding a trial court should ordinarily not allow a jury to hear out-of-court coconspirator declarations before holding a hearing, outside the jury's presence, to determine whether such statements are admissible under Federal Rule of Evidence 801(d)(2)(E)). After holding a *James* hearing, however, the district court concluded the charged conspiracy existed, Quintero-Rivas and Campos were members of the conspiracy, and all the statements at issue were made in the course of and in furtherance of the conspiracy. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (setting forth standard for admitting evidence pursuant to Rule 801(d)(2)(E)).

organization was Rafael Rivas." Consistent with its opening statement, the overwhelming bulk of the government's extensive trial evidence centered around the drug trafficking activities of Quintero-Rivas.[6]

During closing arguments, counsel for Gonzalez-Gondarilla, Michael Johnson, stated the evidence demonstrated Quintero-Rivas sold drugs, but asserted there was no evidence Gonzalez-Gondarilla participated in any drug trafficking. After the remarks, and after Figueroa-Labrada's counsel gave his closing, and after the government made its final closing, and after the district court submitted the matter to the jury, Quintero-Rivas objected to Johnson's comments and moved for a mistrial. In support of the motion, Quintero-Rivas argued as follows:

> We had previously filed a motion to sever in this case. That motion was overruled. In that motion we set out that there's the possibility of the inconsistent defenses.[7] In closing arguments those things

---

[6]It is unnecessary for purposes of resolving this appeal to set out the extensive trial evidence supporting the jury's guilty verdicts as to Quintero-Rivas. It would be an understatement, however, to call the evidence overwhelming. The government presented to the jury a multitude of wiretapped phone calls in coded language highly indicative of the drug trade. Extensive physical surveillance supported each alleged drug transaction identified in the indictment. Furthermore, as the investigation was coming to a close, officers arrested one of the co-conspirators leaving Quintero-Rivas's apartment with a substantial quantity of methamphetamine. Finally, when agents eventually searched Quintero-Rivas's apartment, they found a large sum of cash, a digital scale coated with methamphetamine residue, a drug ledger, and several cell phones.

[7]As should be apparent from the discussion above, at no point did Campos's motion to sever raise the potential for inconsistent defenses as a basis for

(continued...)

came to life with Mr. Johnson pointing at Mr. Rivas and calling him a drug dealer, much to Mr. Quintero-Rivas's prejudice. We would move for a mistrial.

The district court denied the motion. The jury convicted Quintero-Rivas on all twelve counts.

### III. DISCUSSION

On appeal, Quintero-Rivas "sets forth one proposition of error with two prongs." Appellant's Br. at 7. He asserts Johnson's conduct entitles him to a new trial under two separate legal theories: the district court erred (1) in failing to grant his motion for a mistrial; and (2) in failing to *sua sponte* reconsider and grant his previously denied severance motion. Neither contention is meritorious.

### A. Mistrial

In support of his assertion the district court erred in denying his request for a mistrial, Quintero-Rivas points to comments made by Johnson during opening and closing statements. In particular, Quintero-Rivas asserts Johnson sought to inculpate him, essentially acting as a second prosecutor. According to Quintero-Rivas, he was forced to defend himself against both the accusations of the government and from repeated, unsubstantiated statements from Johnson.

Quintero-Rivas did not object to any of the comments he now identifies as improper. As a result, the district court was denied the opportunity to give a

[7](...continued)
severance. *See supra* n.5 & accompanying text.

specific curative jury instruction, should it deem one appropriate. *United States v. Martinez*, 455 F.3d 1127, 1130 n.2 (10th Cir. 2006) (stating a defendant must object "at the first reasonable opportunity" so the district court may take curative actions less drastic than a mistrial). For that reason, this court should limit its review to plain error. *United States v. Lamy*, 521 F.3d 1257, 1265 (10th Cir. 2008). Because, however, Quintero-Rivas is not entitled to relief even under the normally applicable abuse-of-discretion standard, *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004), this court need not further consider the question.

A mistrial is appropriate only when a defendant's right to a fair and impartial trial has been impaired. *United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir. 2002). In the context of this case, we consider (1) whether any of the district court's instructions limited the effect of the improper statements and (2) "whether the improper remark[s] [were] inconsequential in light of the other evidence of the defendant's guilt." *Meridyth*, 364 F.3d at 1183.

Applying this standard, we first note that Quintero-Rivas's assertion Johnson acted like a second prosecutor is simply not supported by the record. It is certainly true Johnson stated on several occasions that Quintero-Rivas was dealing drugs. Johnson also, however, challenged key pieces of the evidence and pointed to evidence contradicting the government's theory that Quintero-Rivas was a sophisticated drug distributor. Furthermore, Johnson spent much of his

closing argument attacking the credibility of Tomas Olivas, the government's primary witnesses against Quintero-Rivas. In particular, he asserted the evidence showed the primary drug distributor in this case was Olivas, and that Olivas had set up a down-on-his luck Quintero-Rivas.[8] Likewise, Johnson asserted the evidence demonstrated a drug ledger the government attributed to Quintero-Rivas actually belonged to Olivas. Thus, while it is true that Johnson stated during his arguments to the jury that the evidence demonstrated Quintero-Rivas distributed drugs, it is simply not accurate to assert Johnson acted as a second prosecutor.

In any event, Quintero-Rivas's assertion he was prejudiced by Johnson's statements is unconvincing given the overwhelming evidence presented at trial. *See supra* n.6 (summarizing overwhelming nature of evidence of Quintero-Rivas's guilt); *Lamy*, 521 F.3d at 1266 . Moreover, the district court's general jury instructions specifically informed the jury as follows: "The evidence in this case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence, and all facts which have been admitted or stipulated. The arguments and statements of the attorneys are not evidence." This court presumes the jury followed these instructions. *United States v. Davis*, 40 F.3d 1069, 1079 (10th Cir. 1994) ("This court has held that potentially prejudicial statements by a

---

[8]The record reveals that at the time Olivas met Quintero-Rivas and brought him into the drug trade, Quintero-Rivas was unemployed because his restaurant had just gone out of business.

codefendant's counsel can be remedied through jury instructions."). Given the overwhelming evidence against Quintero-Rivas and the district court's instruction regarding the attorneys' opening and closing statements, this court easily concludes the district court did not abuse its discretion in denying Quintero-Rivas's mistrial motion.

## B. Severance

Quintero-Rivas argues the district court erred in failing to *sua sponte* reconsider and grant his previously denied motion to sever. In so arguing, he misstates the substance of his severance motion. The motion was based exclusively, at least in relevant part, on the potential for prejudice from spillover. *See supra* n.5 & accompanying text. In the motion for mistrial made after the case was submitted to the jury, however, Quintero-Rivas asserted the previously denied motion was based on the possibility of inconsistent defenses. Quintero-Rivas has not argued a severance motion based on the potential for prejudice from spillover preserves for appellate review an inconsistent-defenses theory. Thus, Quintero-Rivas has forfeited any severance claim based on inconsistent defenses. To obtain appellate relief on a claim of error forfeited in the district court, an appellant must satisfy the exacting dictates of Federal Rule of Criminal Procedure 52(b) by demonstrating the existence of plain error.

Quintero-Rivas cannot show error, let alone plain error. The Federal Rules of Criminal Procedure express a "preference in the federal system for joint trials

of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  "Prejudicial joinder occurs only when an individual's right to a fair trial is threatened or actually deprived."  *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).  To establish "real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials."  *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (quotation omitted).  The trial record reveals no antagonism of defenses among any of the co-defendants.  Each defendant simply asserted the government failed to prove its case.  No defendant tried to blame any other defendant for drugs the government attributed to him.  For the reasons set forth in Section III.A. of this opinion, Quintero-Rivas cannot show any real prejudice flowing from Johnson's opening and closing statements.

## IV.  CONCLUSION

The judgment of conviction entered by the United States District court for the District of Western Oklahoma is hereby **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-10-